UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** )( | |
| )( | **Criminal No. 21-204 (BAH)** |
| **v.** )( | **Chief Judge Howell** |
| )( | **Trial: August 1, 2022** |
| **MATTHEW BLEDSOE** )( | |

**MOTION TO SUPPRESS DATA RECOVERED
FROM FACEBOOK AND INSTAGRAM ACCOUNTS
AND DERIVATIVE EVIDENCE AND INFORMATION
<u>AND POINTS AND AUTHORITY IN SUPPORT THEREOF</u>**

COMES NOW the defendant, Matthew Bledsoe, by and through undersigned counsel, and respectfully moves this Honorable Court, pursuant to the Fourth Amendment to the United States Constitution, to suppress data obtained by law-enforcement agents from the non-public portions of Facebook and Instagram accounts that the government claims can be linked to him.  Additionally, he moves the Court to suppress any evidence and information derived from exploitation of that data.  In support of this motion, Mr. Bledsoe would show:

    1.    On March 3, 2021, law-enforcement agents obtained a warrant (Warrant) to have Facebook, Inc. provide data from twenty-five Facebook and Instagram accounts. Warrant at 1 & Attachment A at 1-2.  The accounts at issue were identified by a set of two numbers: a User ID number and an Object ID number.  Warrant, Attachment A at 1-2.  According to information provided in discovery, in response to the Warrant, Facebook, Inc. provided the law-enforcement agents with data from a number of

1

Facebook and Instagram accounts, including data from a Facebook account and an Instagram account that the government now claims can be linked to Mr. Bledsoe.

2. The application for the Warrant contained an affidavit (Affidavit) that had been attested to by a law-enforcement agent (affiant). In the Affidavit, the affiant alleged that a large group of people illegally entered and occupied the United States Capitol on January 6, 2021 while Congress was convened to count the Electoral College votes from the recent presidential election. Affidavit at 4-14. According to the affiant, after the events of January 6, law-enforcement agents asked Facebook, Inc. to "identify… any users that broadcasted live videos which may have been streamed and/or uploaded to Facebook from physically within the building of the United States Capitol during the time on January 6, 2021 in which the mob had stormed and occupied the Capitol building." Id. at 15 (emphasis added). The affiant then explained that, in response to this request, Facebook, Inc. provided the law-enforcement agents with the User ID numbers and Object ID numbers that were then used to identify the accounts that the Warrant compelled Facebook, Inc. to provide data for. Id.

3. In regards to the Facebook and Instagram accounts that the government now claims can be linked to Mr. Bledsoe, while the Affidavit did indicate that Facebook, Inc. provided the User ID and Object ID numbers that are associated with those accounts in response to a request for it to identify persons who may have streamed and/or uploaded videos to their Facebook and Instagram accounts from inside the U.S. Capitol at the time the events of January 6 were ongoing, the Affidavit provides no additional information to further establish that those accounts were in fact used by someone inside the Capitol at

the relevant time to steam and/or upload videos. Thus, the Affidavit only establishes, at the most, that it is possible that those accounts were used by someone inside the Capitol at the relevant time to stream and/or upload videos. Accordingly, at the most, the Affidavit only establishes a possibility that the Facebook and Instagram accounts at issue might contain evidence of criminal activity.

      4.      To the extent that, pursuant to the Warrant, law-enforcement agents obtained from Facebook, Inc. data from the non-public portions of the Facebook and Instagram accounts that the government now claims can be linked to Mr. Bledsoe, the law-enforcement agents violated Mr. Bledsoe's Fourth Amendment rights. Moreover, the government cannot rely on the Leon good-faith exception to avoid application of the exclusionary rule to that data. Accordingly, the data must be suppressed. Additionally, any evidence and information derived from exploitation of that data must also be suppressed.

## DISCUSSION

### A. No Probable Cause

As a general matter, in order to make out probable cause for a warrant to conduct a search, law-enforcement agents seeking the warrant must establish that "there is a fair probability that contraband or evidence of a crime will be found in [the] particular place [to be searched]." Illinois v. Gates, 462 U.S. 213, 238 (1983). In order to establish probable cause for a search, a nexus must be shown to exist between the item to be searched and the criminal activity under investigation. Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 307 (1967); Groh v. Ramirez, 540 U.S. 551, 568 (2004). This is

in keeping with the fact that the "manifest purpose of th[e] [Fourth Amendment's] particularity requirement was to prevent general searches." Maryland v. Garrison, 480 U.S. 79, 84 (1987).  Indeed, the Fourth Amendment's particularity requirement is to "ensure that [a] search will be carefully tailored to its justifications, and will not take the character of the wide-ranging exploratory searches the Framers intended to prohibit." Id.

Non-public posts made to social media platforms are protected by the Fourth Amendment.  United States v. Chavez, 423 F.Supp.3d 194, (W.D.N.C. 2019) (defendant has legitimate expectation of privacy in non-public Facebook posts because such posts are not directed to Facebook, thus rendering the third-party doctrine inapplicable); see also United States v. Allen, No. 16-10141-01-EFM, slip op. at 5-10, 16-17 (finding that Fourth Amendment was technically violated by a search of defendant's Facebook account but also finding that exclusionary rule was inapplicable because issuing magistrate judge had only made technical error in finding probable cause); United States v. Whitt, No. 1:17cr060, slip op. at 1 (S.D. Ohio January 17, 2018) (assuming that "Defendant has a certain expectation of privacy in non-public portions of his Facebook account, such that the seizure of evidence at issue triggers the Fourth Amendment"); Commonwealth v. Carrasquillo, 179 N.E.2d 1104, 1117-20 (Mass. 2022) (finding that a person can retain a legitimate expectation of privacy in posts he makes to Snapchat if he takes steps to keep posts private).

In the instant matter, in regards to the Facebook and Instagram accounts that the government now claims can be linked to Mr. Bledsoe, the most that the Affidavit established is that it is possible that those accounts were used to stream and/or upload

4

videos during the time that the events at the Capitol on January 6 were ongoing by someone who may have been inside the building. Accordingly, the best that can be said of it is that it merely established a possibility that those Facebook and Instagram accounts might contain evidence of criminal activity. But this is quite obviously not the same thing as establishing probable cause that those accounts do in fact contain such evidence. Accordingly, to the extent the law-enforcement agents used the Warrant to obtain from Facebook, Inc. data from the non-public portions of those Facebook and Instagram accounts, the law-enforcement agents violated Mr. Bledsoe's Fourth Amendment rights.

### B.  No Good-Faith Reliance

Likely, the government will now argue that, even if data from the non-public portions of the Facebook and Instagram accounts that it now claims can be linked to Mr. Bledsoe was obtained in violation of his Fourth Amendment rights, application of the exclusionary rule to that data would still be inappropriate because the law-enforcement agents who obtained the data were relying in good faith on the Warrant. See United States v. Leon, 468 U.S. 897 (1984). However, the Leon good-faith exception was not intended to apply in those situations where a warrant "is based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.'" Leon, 468 U.S. at 915 (quoting Gates, 462 U.S. at 239). Additionally, the exception does not apply "when the affidavit [used to obtain a warrant] is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable." Leon, 468 U.S. at 914. Furthermore, for the exception to apply, the judicial officer's action in authorizing the warrant "cannot be a mere ratification of the bare conclusions of

others." Leon 468 U.S. at 915 (quoting Aguilar v. Texas, 378 U.S. 108, 114-115 (1964)). Finally, "[e]ven if the warrant application was supported by more than a 'bare bones' affidavit, a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances." Leon, 468 U.S at 915 (citing Gates, 462 U.S. at 238-239).

      Here, it cannot be credibly claimed that, by doing no more than establishing that there was a possibility that the Facebook and Instagram accounts that the government now claims can be linked to Mr. Bledsoe might contain evidence of criminal activity, the Affidavit came close to establishing a "substantial basis for determining the existence of probable cause" that those accounts did in fact contain such evidence.  Additionally, it cannot be credibly claimed that it was objectively reasonable for the law-enforcement agents executing the Warrant to have relied on it to obtain data from the non-public portions of those Facebook and Instagram accounts.  Beyond this, it cannot be credibly claimed that, in allowing law-enforcement agents to obtain data from the non-public portions of those accounts based only on a showing that those accounts might possibly contain evidence of criminal activity, the judicial officer who signed the warrant was properly exercising independent legal judgment, nor can it be denied that his probable-cause determination that those accounts would contain evidence of criminal activity "reflected an improper analysis of the totality of the circumstances."  For all the above reasons, the government cannot rely on the Leon good-faith exception to avoid

6

application of the exclusionary rule to the data obtained from the non-public portions of the Facebook and Instagram accounts that it now claims can be linked to Mr. Bledsoe.

### C.  Suppression

Because the data from the non-public portions of the Facebook and Instagram accounts that the government now claims can be linked to Mr. Bledsoe was obtained in violation of his Fourth Amendment rights and because the government cannot rely on the Leon good-faith exception to avoid application of the exclusionary rule to that data, the data must be suppressed.  Additionally, any evidence and information derived from exploitation of that data must also be suppressed.  Taylor v. Alabama, 457 U.S. 687, (1982); United States v. Crews, 445 U.S. 463, 471 (1980); Dunaway v. New York, 442 U.S. 590 (1975); Brown v. Illinois, 422 U.S. 590 (1975); Wong Sun v. United States, 371 U.S. 471 (1973).

## **CONCLUSION**

WHEREFORE, the defendant, Matthew Bledsoe, moves this Honorable Court to suppress data obtained by law-enforcement agents from the non-public portions of the Facebook and Instagram accounts that the government claims can be linked to him. Additionally, he moves the Court to suppress any evidence and information derived from exploitation of that data.

                                                  Respectfully submitted,

                                                  _____/s/_____
Jerry Ray Smith, Jr.
D.C. bar No. 448699
Counsel for Matthew Bledsoe
717 D Street, N.W.
Suite 310
Washington, DC 20004
E-mail: jerryraysmith@verizon.net
Phone: (202) 347-6101