**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 21-cr-00204 - BAH** |
| | : | |
| **MATTHEW BLEDSOE,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE**
**CONCERNING CONDUCT BY OTHERS**
**AND REFERENCES TO SUCH CONDUCT**

The United States, by and through its undersigned attorneys, respectfully opposes the

Defendant's Motion in Limine to Exclude Evidence Concerning Conduct by Others that

Defendant was Unaware of and References to Such Conduct ("Motion in Limine," ECF No.

194).[1]

**I.    BACKGROUND**

Defendant Matthew Bledsoe ("Defendant Bledsoe") is charged in this case with violating

the following laws during the January 6, 2021 Capitol riots: 18 U.S.C. §§ 1512(c)(2) and 2,

Obstruction of an Official Proceeding and Aiding and Abetting ("Count I"); 18 U.S.C.

§ 1752(a)(1), Entering and Remaining in a Restricted Building or Grounds ("Count II"); 18

U.S.C. § 1752(a)(2), Disorderly and Disruptive Conduct in a Restricted Building or Grounds

("Count III"); 40 U.S.C. § 5104(e)(2)(D), Disorderly Conduct in a Capitol Building ("Count

---

[1] Although Defendant Bledsoe's Motion in Limine was titled "Motion in Limine to Exclude Evidence Concerning Conduct By Others That Defendant Was Unaware Of And References To Such Conduct," the body of the Motion in Limine appears to assert that *any* evidence concerning conduct by others is not relevant in connection with Counts II-V of the Indictment.  Motion In Limine at 2, ¶4, ECF No. 194 (emphasis added).

IV"); and 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol Building ("Count V").  *See* Indictment, ECF No. 23.

In the days immediately following the November 3, 2020 election, Bledsoe began posting to social media about the presidential election, including twice predicting riots in Facebook posts ("Trump won, riots will start again soon as the public finds out and propaganda machine start spewing off at the mouth" and "Everyone with half a braiin [sic] knows Trump already won, but when the useful idiots find out cue the riots").  Ex. 2-3.[2]  On January 6, 2021, Defendant Bledsoe attended the "Stop the Steal" rally in downtown Washington, D.C.  While Defendant Bledsoe was at that rally, he received a series of text messages from his wife informing him of the activities of the joint session of Congress that was convened at the United States Capitol for the certification.  Between 1:07 p.m. and 1:21 p.m., Defendant Bledsoe's wife sent text messages informing him that "Pence is making a speech," "Pence is announcing the votes now," "Arizona has been rejected[.] They're going into chambers now to review," and "Arizona just has 2 objections to their electoral votes."  Ex. 38-41.  Finally, at 1:40 p.m., an individual, believed to be Bledsoe's relative, sent a text message to Defendant Bledsoe of a posting (a "Tweet"), on the social media platform Twitter, which included video footage:

---

[2] On June 14, 2022, the parties filed a Joint Pretrial Statement.  *See* ECF No. 201.  A list of government exhibits was attached as Exhibit C, which provided a description of each exhibit. The exhibits were provided to defense counsel prior to the filing of the Joint Pretrial Statement. Reference to the exhibits in the body of this Opposition correspond to ECF No. 201, Exhibit C.



Ex. 43 and 155.  The video footage showed a crowd shoving and charging at Capitol police officers who were struggling to keep the crowd from breaking past their line of defense and entering the Capitol.  Phone records show that, shortly after reading the text message with the above Tweet, Defendant Bledsoe texted he was "on [his] way."  Ex. 43-46.  As Defendant Bledsoe was arriving at the Capitol grounds, his friends and family continued to keep him apprised of relevant goings-on in and around the Capitol, for instance sending text messages reading "There's a bomb scare near the Capital [sic]," "You making them evacuate capital [sic] hill?!!,"  and "Videos everywhere of people and police fighting at capital [sic].  Please leave right now."  Ex. 47, 48, and 52.

Instead of leaving, however, Defendant Bledsoe proceeded to journey further onto Capitol grounds to the Capitol building itself, where closed-circuit television ("CCTV") footage and phone footage showed Defendant Bledsoe participated in the riot – scaling a wall at the upper Northwest terrace (Ex. 95 and 154); entering the Senate Wing Doors by the upper Northwest terrace (a fire exit door), an audible alarm blaring in the background, with glass

visibly broken in the door he entered, while yelling incendiary phrases, including "In the Capitol. This is our house. We pay for this shit. Where's those pieces of shit at?"(Ex. 60); climbing a statue (Ex. 15); and getting as close to the members of Congress present for the certification as the area immediately outside the Corridor to the House Chamber and the hallways near the door to the Speaker's Lobby (Ex. 26).

During that time, radio transmissions made by the Capitol Police and Metropolitan Police indicate that officers were struggling to adequately protect members of Congress and to stop the rioters from reaching sensitive areas because law enforcement was forced to redirect personnel to several different breached areas, including multiple areas that Defendant Bledsoe entered.  Ex. 144-145.  Also during this time, Defendant Bledsoe's wife continued to send him text messages, including informing him that "They might stop the count because people are breaking into the capital [sic]."  Ex. 61.  Around 2:49 p.m., Defendant Bledsoe left the Capitol building.  Ex. 33 and 158.   His wife continued to keep him abreast of the activities going on in and around the Capitol, including sending a text message noting that "The national Guard has been activated so Matt needs to get the hell up out of there."  Ex. 69.  However, within two hours, Defendant Bledsoe returned, lingering outside the Columbus Doors (also known as the East Rotunda doors) to the Capitol building as law enforcement continued to work to secure the building and its campus.  Ex. 73-75 and 77.  Later that evening, law enforcement was successful in securing the Capitol and its grounds.

In the days following the riot, Defendant Bledsoe continued to message with friends and family and to post on social media regarding what happened during the riot, discussing both events that occurred near him and events that occurred in other parts of the Capitol building.  For

instance, on January 7, 2021, Defendant Bledsoe posted on Facebook photos of Members of Congress taking cover and security officers defending the Members during the riot:

Image 1                                        Image 2



Ex. 24 and 25.

## II.      ARGUMENT

**A.      Defendant Bledsoe's Motion in Limine should be dismissed as overly broad.**

Defendant Bledsoe's Motion in Limine seeks to exclude (1) in connection with Count I, all evidence of, or references to, the conduct of others, unless it can at least be shown that Defendant Bledsoe was aware of the conduct at the time it was occurring, and (2) in connection with Counts II-V, all evidence of, or references to, the conduct of others.  Motion in Limine at 2, ECF No. 194.  The motion does not refer to any specific evidence or provide any concrete

examples, and a motion to exclude *all evidence of or references to the conduct of others* is exceptionally vague and overbroad.  In light of the lack of specific evidence identified and the overly broad nature of the request, the motion in limine should be denied.  *Fakhoury v. O'reilly*, No. 16-13323, 2022 WL 909347, at *6 (E.D. Mich. Mar. 28, 2022)  ("A court is well within its discretion to deny a motion *in limine* that fails to identify the evidence with particularity or to present arguments with specificity") (emphasis added) (quoting *United States v. Cline*, 188 F. Supp. 2d 1287, 1292 (D. Kan. 2002)) (citing *Nation Union v. L.E. Myers Co. Group*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996)); *Ctr. Hill Cts. Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, No. 19-CV-80111, 2020 WL 496065, at *2 (S.D. Fla. Jan. 30, 2020) ("The Court concludes that this motion *in limine* is overbroad in that it 'lacks the necessary specificity with respect to the evidence to be excluded'"); *In re Homestore.com, Inc.*, No. CV 01-11115 RSWL CWX, 2011 WL 291176, at *2 (C.D. Cal. Jan. 25, 2011) ("The Court finds Plaintiff's request as over-broad and vague, and therefore inappropriate for review at the motion *in limine* stage); *Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.*, No. CV 08-8525PSGPJWX, 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010) ("motions *in limine* should rarely seek to exclude broad categories of evidence, as the court is almost always better situated to rule on evidentiary issues in their factual context during trial") (citing *Sperberg v. Goodyear Tire & Rubber Co.,* 519 F.2d 708, 712 (6th Cir.1975) ("A better practice is to deal with questions of admissibility of evidence as they arise")).

**B.     Defendant Bledsoe's Motion in Limine should be dismissed as moot as to Count One, as evidence indicates he was aware of the conduct by all relevant parties as it was occurring.**

With regard to Count I of the Indictment, Defendant Bledsoe seeks to exclude as irrelevant any conduct by others "unless it can at least be shown that Mr. Bledsoe was aware of the conduct at the time it was occurring."  Motion in Limine at 2, ECF No. 194.  As an initial

matter, substantial evidence indicates that Defendant Bledsoe was aware of the conduct of all relevant parties – the Vice President, members of Congress, law enforcement, and other rioters – during the Capitol riots.  As discussed above, shortly before Defendant Bledsoe left the "Stop the Steal" rally to go to the Capitol, he received text and social media messages informing him of conduct by (1) the Vice President (e.g., "Pence is making a speech," "Pence is announcing the votes now"), (2) Congress ("Arizona has been rejected[.] They're going into chambers now to review," "Arizona just has 2 objections to their electoral votes"), (3) other rioters (rioters had "breached the Capitol building, tearing down 4 layers of security fencing…fighting police who are overrun"), and (4) law enforcement (a video showed Capitol police officers being attacked by rioters while the officers were struggling to keep the crowd from breaking past their line of defense and entering the Capitol).  Phone and social media records also confirm that such updates continued while Defendant Bledsoe was at and inside the Capitol.  Accordingly, Defendant Bledsoe was aware of all relevant conduct by others as it was occurring, and the Motion in Limine with regard to Count I is moot.

**C.      Even if Defendant Bledsoe was unaware of some of the conduct of others as it was occurring, evidence of such conduct is still relevant to the Count One charge of Obstruction of an Official Proceeding.**

Regardless of whether Defendant Bledsoe was aware of all pertinent conduct by all germane parties as such conduct was occurring, evidence of such conduct is nonetheless relevant.

It is unclear what specific evidence Defendant Bledsoe seeks to exclude with the Motion in Limine.  However, there are currently four proposed exhibits included in the Government's Exhibit List (Joint Pretrial Statement at 23–34, ECF No. 201) which were not created by or focused on Defendant Bledsoe and which prominently feature the conduct of others:

- Exhibit 144: Labeled "USCP radio run," a series of radio transmissions by the United States Capitol Police ("USCP") during the Capitol riots;

- Exhibit 145: Labeled "MPD radio run," a series of radio transmissions by the Washington, D.C. Metropolitan Police Department ("MPD") during the Capitol riots;

- Exhibit 146: Labeled "USCP compilation.mp4;" a video compilation of timestamped USCP closed-circuit television ("CCTV") footage and diagrams of the Capitol that show the times and locations of major breaches of the Capitol building, and how law enforcement addressed those breaches and divvied up its resources; and

- Exhibit 153: Labeled "Cong -4 - Video Montage with Congressional Record.mp4," a video and audio compilation of Congress' activities on January 6, 2021, including actions taken regarding the certification of the election results and Congress' reaction to, and activities in light of, the breaches and rioters.

Additionally, on January 7, 2021, Defendant Bledsoe posted on Facebook two photographs of Congress members hiding and/or preparing to defend themselves during the Capitol riot, along with comments on the photographs:

- Exhibit 24: Labeled "Facebook - page 2179-2182 – how lawmakers should feel.pdf," a January 7, 2021 Facebook post of a photo of Congress members hiding during the riot with the comment "How corrupt politicians should feel" (Image 1 above); and

- Exhibit 25: Labeled "Facebook - page 2183-2186 – gun House.pdf," a January 7, 2021 Facebook post of a photo of Congress members hiding and some individuals, possibly law enforcement, holding guns and otherwise preparing for a possible attack (Image 2 above). [3]

---

[3] As noted above, Defendant Bledsoe likely was aware of such conduct at the time it was

The admissibility of the above evidence depends on whether the evidence is relevant to the offenses in Count I.  Evidence "is admissible provided that it is 'relevant' and not otherwise prescribed by law or rule."  *United States v. Fonseca*, 435 F.3d 369, 75 (D.C. Cir. 2006) (citing Fed. R. Evid. 402); *United States v. Mathews*, 62 F. Supp. 2d 59, 61 (D.D.C. 1999) ("In general all relevant evidence is admissible").  A piece of "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Accordingly, "[s]o long as the evidence makes a fact of consequence more or less likely, it is relevant."  *United States v. Latney*, 108 F.3d 1446, 1449 (D.C. Cir. 1997).  Determining relevancy for a criminal trial focuses on whether the evidence addresses elements of either the charged offense or any relevant raised defenses.  *United States v. Walker*, 32 F.4th 377, 388 (4th Cir. 2022) ("The governing hypothesis of any criminal prosecution, for the purpose of determining relevancy of evidence introduced, consists of elements of the offense charged and any relevant defenses raised to defeat criminal liability") (quoting *United States v. Lamberty*, 778 F.2d 59, 60–61 (1st Cir. 1985)).  However, "evidence need not be *dispositive* of an element of the crime to be relevant, it must merely cross the low threshold prescribed by Rule 401 [of making a consequential fact more or less probable]."  *United States v. Slatten*, 310 F. Supp. 3d 141, 145 (D.D.C. 2018) (emphasis

---

occurring in light of friends and family informing him of various details regarding Congress and the Capitol breach.  However, to the extent that Defendant Bledsoe would argue that he was unaware of the specifics of how Congress dealt with the security breach and how they were hiding, it is being treated as "conduct by others of which Defendant Bledsoe was unaware at the time."  No other exhibits currently involve conduct by others that Bledsoe was unaware of at the time.  The other exhibits in the Government's Exhibits List are social media messages and records *for or including* Defendant Bledsoe; photographs and videos *taken by or featuring* Defendant Bledsoe; phone records, including location information *for* Defendant Bledsoe and text messages *to/from* Defendant Bledsoe; and items and photographs of items *owned and/or worn* by Defendant Bledsoe.  *See* Joint Pretrial Statement at 23–34, ECF No. 201.

added).  Thus, whether "evidence is not conclusive, or even nearly so, [it] is of no moment.
'[M]ost convictions result from the cumulation of bits of proof which, taken singly, would not be
enough in the mind of a fair minded person.'"  *Latney*, 108 F.3d at 1449 (quoting *United States
v. Pugliese,* 153 F.2d 497, 500 (2d Cir.1945) (Hand, J.)).

Accordingly, to establish relevance, and hence admissibility, for the above-discussed
exhibits, it is necessary to establish that the "conduct by others" depicted by the exhibits makes a
consequential fact more or less probable for at least one element of 18 U.S.C. §§ 1512(c)(2) and
2.  Under Section 1512(c)(2), criminal liability arises for "[w]hoever corruptly… obstructs,
influences, or impedes any official proceeding, or attempts to do so."  18 U.S.C. § 1512(c)(2).
The Government seeks to prove beyond a reasonable doubt that Defendant Bledsoe violated 18
U.S.C. § 1512(c)(2), which includes proving beyond a reasonable doubt the following four
elements:

> First, the defendant attempted to or did obstruct or impede an official proceeding.

> Second, the defendant acted with the intent to obstruct or impede the official proceeding.

> Third, the defendant acted knowingly, with awareness that the natural and probable effect
> of his conduct would be to obstruct or impede the official proceeding.

> Fourth, the defendant acted corruptly.

*See* Joint Pretrial Statement (Proposed Jury Instructions) at 13, ECF No. 201.[4]

---

[4] Defendant Bledsoe made no objections to those four elements in the jointly proposed jury
instructions.  Joint Pretrial Statement at 13, ECF No. 201.  Additionally, of the four Capitol riot
cases charging 18 U.S.C. § 1512(c)(2) that have gone to jury trials so far, two cases have
included the above language in their final jury instructions, *United States v. Reffitt*, No. 1:21-cr-
32, 2022 WL 712844 (D.D.C.), Final Jury Instructions at 25, ECF No. 119; *United States v.
Robertson*, No. 1:21-cr-34, 2022 WL 1101660 (D.D.C.), Final Jury Instructions at 12, ECF No.
86.  A third case included almost identical language, the only difference being the language for
element two (using the wording "*intended* to obstruct" instead of "*acted with the intent* to
obstruct…"  *United States v. Hale-Cusanelli*, No. 1:21cr37, 2022 WL 1731979 (D.D.C.), Final
Jury Instructions at 24, ECF No. 84.  The fourth case used different language, listing only two

The above-discussed exhibits are probative of multiple elements of the Obstruction of an Official Proceeding charge.  For instance, the USCP and MPD radio runs (Exhibits 144 and 145) are radio transmissions that were made by law enforcement on the scene at the Capitol on January 6, 2021.  Those radio runs indicate that officers were struggling to adequately protect members of Congress and sensitive areas because they were forced to redirect personnel to several different breached areas, including multiple areas in which Defendant Bledsoe was located at that time.  Even if Defendant Bledsoe did not know specifically about the radio transmissions and exactly where officers were being redirected, such evidence speaks directly to how successful Defendant Bledsoe—and the mob—was in diverting police resources and obstructing/impeding an official proceeding (the certification of the electoral votes).  Similarly, the USCP compilation.mp4 (Exhibit 146) shows, through CCTV footage, major Capitol breaches and the law enforcement response over the course of the Capitol riot.  Such footage would not only help the jury to better understand the setup of the Capitol and the timing of the breaches, it also helps highlight why Defendant Bledsoe moving around certain areas was so harmful and how his joining certain crowds played a role in interrupting official proceedings.

The Cong-4-Video Montage with Congressional Record.mp4, a video and audio compilation of Congress' activities on January 6, 2021, similarly confirms that Defendant Bledsoe and the mob he was with were a reason the certification proceeding was obstructed.  Also, the two

---

elements ("First, the defendant attempted to or did obstruct or impede any official proceeding, and Second, the defendant acted corruptly"); however, under the definition of "corruptly" those final jury instructions also included the "knowingly" and "intent to obstruct" requirements above.  *United States v. Thompson*, No. 1:21-cr-161, Final Jury Instructions at 25, 27, ECF No. 83.  Additionally, in *United States v. Kevin & Hunter Seefried*, No. 1:21-cr-287, a bench trial, Judge McFadden used materially the same instructions, adopting the instructions in the Government's trial brief, *see United States v. Seefried*, No. 1:21-cr-287, 2022 WL 2188320 (D.D.C.), Trial Brief at 9, ECF No. 88.

photographs of Congressmembers hiding and preparing for attack also confirm that Defendant Bledsoe and the mob were successful in interrupting the certification of the electoral votes and are consequently relevant to the Obstruction of an Official Proceeding charge.

Additionally, those exhibits are probative of whether Defendant Bledsoe acted corruptly. To show that a defendant acted "corruptly" under 18 U.S.C. § 1512(c)(2), the Government must show that the defendant acted (1) with intent to obstruct, impede, or influence; and (2) wrongfully (such as using unlawful means and/or have a wrongful or unlawful purpose).  *See United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011) (to act "corruptly" is to act "with an improper purpose" and "with the specific intent to subvert, impede or obstruct") (quoting *United States v. Mintmire*, 507 F.3d 1273, 1289 (11th Cir. 2007)); *United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013); *United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013) (upholding jury instruction defining "corruptly" as acting with "consciousness of wrongdoing") (internal quotation marks omitted); *United States v. Matthews*, 505 F.3d 698, 705 (7th Cir. 2007) (upholding instruction defining "[c]orruptly" as acting "with the purpose of wrongfully impeding the due administration of justice"); Seventh Circuit Pattern Criminal Jury Instruction for § 1512(c) ("A person acts 'corruptly' if he or she acts with the purpose of wrongfully impeding the due administration of justice."); *United States v. Mostofsky*, No. CR 21-138 (JEB), ⸺ F.Supp.3d at ⸺, 2021 WL 6049891, at *11 (D.D.C. Dec. 21, 2021) ("The Court also concurs with how the court defined 'corruptly' in *Sandlin* — *i.e.*, requiring that defendants acted 'unlawfully, and with the intent to obstruct[,]' impede, or influence an official proceeding") (citing *United States v. Sandlin*, No. 21-CR-88 (DLF), ⸺ F.Supp.3d at ⸺, 2021 WL 5865006, at *14 (D.D.C. Dec. 10, 2021)); *see also Arthur Andersen LLP v. United States*, 544 U.S. 696, 706 (2005) ("corruptly," pursuant to neighboring provision 18 U.S.C § 1512(b)(2),

12

requires that the defendant acted with "consciousness of wrongdoing").

The USCP and MPD radio runs (Exhibits 144 and 145) and USCP compilation.mp4 (Exhibit 146) directly address the unlawful means used by Defendant Bledsoe – who only went to the Capitol *after* finding out police were under attack from the anti-certification mob.  A jury could reasonably believe that he wanted to be involved in the unlawful mob and either serve as a distraction to police (and accordingly help other rioters move further into the Capitol) or reach to the heart of the Capitol himself while police were distracted.

Similarly, Images 1 and 2 above, in which Defendant Bledsoe commented on photos of Congressmembers hiding in fear as he and other rioters breached the Capitol (which is further evidence of how Defendant Bledsoe's actions disrupted the proceeding), are relevant to his "intent to obstruct, impede, or influence" the certification.  His comments on those Images— "How corrupt politicians should feel" and "Our House!"—permit the inference that Defendant Bledsoe likely had the intent to obstruct the certification process during the riot and did not have a subsequent change of heart.  A defendant's "motive and intent to obstruct the certification of the election results" is a "fact of consequence in determining the action," and evidence that addresses such motive and intent is relevant.  *United States v. Fitzsimons*, No. 21-CR-158, 2022 WL 1658846, at *4 (D.D.C. May 24, 2022) (citing Fed. R. Evid. 401; *United States v. Foster*, 986 F.2d 541, 545 (D.C. Cir. 1993) ("[T]here is no such thing as 'highly relevant' evidence or ... 'marginally relevant' evidence. Evidence is either relevant or it is not").

**D.     Even if Defendant Bledsoe was unaware of some of the conduct of others as it was occurring, evidence of such conduct is still relevant to the Count One charge of Aiding and Abetting.**

Under Count One of the Indictment, Defendant Bledsoe is also charged with Aiding and

Abetting, pursuant to 18 US.C. § 2, the Obstruction of an Official Proceeding offense discussed

above.  The D.C. Circuit Court has explained that,

> To establish aiding and abetting, the government ha[s] to prove, beyond a reasonable
>
> doubt, that [the defendant] intentionally 'facilitated any part ... of [the] criminal
>
> venture,' with enough 'knowledge [of the crime to] enable[ ] him to make the relevant
>
> legal (and indeed, moral) choice' to opt out instead.

*United States v. Slatten*, 865 F.3d 767, 793–94 (D.C. Cir. 2017) (quoting *Rosemond v. United

States*, 572 U.S. 65, 72, 78 (2014)).

In the instant case, the USCP radio and MPD radio runs (Exhibits 144 and 145) and the

USCP compilation.mp4 (Exhibit 146) reveal how Defendant Bledsoe facilitated the criminal

venture, although he is not specifically in those radio transmissions or videos.  Those exhibits

reveal how the rioting mob divided and overwhelmed police resources, with new groups of

people coming in refreshing the mob in various areas, with multiple spots being breached

multiple times, making it difficult for law enforcement to secure a spot and move on.  Defendant

Bledsoe himself came after the first wave (the initial breach of Peace Circle), refreshing the mob

and adding to its numbers.  He left the Capitol after roaming its halls—occasionally yelling and

chanting and climbing on statues—for 20 minutes.  He returned a couple of hours later and stood

with a group of protestors outside the Columbus doors, photographed police officers in swat gear

carrying riot shields making their way up the Capitol steps on the East side, and remained around

the police line even after police officers cleared the crowd from the Columbus doors.  Such

behavior quite clearly helped to fuel the chaos and crowds that officers fought so hard to get

under control that day.  Also, the Cong-4-Video Montage with Congressional Record.mp4 which showed what was happening with Congress during that time confirmed that such behavior did in fact help facilitate the ultimate goal of obstructing/impeding the certification of the election results.  The photos in Images 1 and 2 as well show that Congress was prevented from having its official proceeding for the hours while the rioters took over the Capitol.

The above discussed exhibits also indicate that Defendant Bledsoe had enough knowledge of the crime and intent to be guilty under an aiding-and-abetting theory.  For Images 1 and 2 above, instead of repudiating such violence against Congress, Defendant Bledsoe endorsed and normalized it.  His callous attitude the day after the Capitol riot makes it more likely that he had the requisite knowledge and criminal intent the day of the actual riot. Knowledge and criminal intent are elements of the aiding-and-abetting offense and hence facts of "consequence" at trial.  *Latney*, 108 F.3d at 1448.  Accordingly, evidence that makes the defendant's knowledge or criminal intent more or less likely is relevant pursuant to Fed. R. Evid. 401.  For instance, in *Latney*, the D.C. Circuit Court found that the trial court had soundly exercised its discretion to admit evidence of a May 1995 arrest for crack cocaine trafficking during a jury trial for defendant's aiding and abetting the distribution of crack cocaine during an earlier September 1994 incident.  *Id.* at 1448–50.  Although the May 1995 drug trafficking occurred after the September 1994 incident that was the focus of the trial, the Circuit Court confirmed that

> The probative force of the May 1995 evidence for these purposes [of showing the defendant's intent and knowledge in September 1994] seems to us beyond question. [The defendant] Latney was using his blue Lincoln Continental in May 1995 to facilitate drug trafficking, which made it more likely that he was doing the same eight months earlier. It was more likely with the evidence than without it (*see* Fed. R. Evid. 401) that Latney was knowledgeable about the drug trade in September 1994… *Given Latney's involvement in the crack cocaine trade in May 1995, it was less likely that he was merely a bystander in the September 1994 transaction*, as his counsel sought to persuade the jury.

[Furthermore] Latney's knowledge was an element of the aiding and abetting offense and hence a fact of "consequence" at his trial. Fed. R. Evid. 401. So was Latney's criminal intent, a state of mind inconsistent with accident or inadvertence… [K]nowledge and intent were in issue because the burden of proving these elements remained on the prosecution.

*Id.* at 1448 (emphasis added) (citing *Estelle v. McGuire,* 502 U.S. 62, 69 (1991)).

To the extent that Defendant Bledsoe would argue that he did not have the full knowledge and details of the obstruction plan and so cannot be held responsible for the actions of other rioters, "once a common design is established, the aider and abettor is responsible not only for the success of the common design, but also for the probable and natural consequences that flow from its execution, even if those [specific] consequences were not originally intended". *United States v. Walker*, 99 F.3d 439, 443 (D.C. Cir. 1996). This "probable and natural consequences" doctrine of aiding and abetting… would be defeated by any definition of aiding and abetting that required the accomplice to have perfect knowledge of the details of the crimes the principal intended to commit. *United States v. Davis*, 828 F. Supp. 2d 405, 409 (D. Mass. 2011), aff'd, 717 F.3d 28 (1st Cir. 2013) (citing *United States v. Walker*, 99 F.3d 439, 443 (D.C. Cir. 1996)).

The D.C. Circuit Court has made it clear that aiders and abettors do not have to have full knowledge beforehand of what every other co-conspirator is doing to be criminally liable for their scheme. For instance, in *Slatten*, the defendant ("Liberty"), was a driver in a four-vehicle convoy that ended up in a shootout that killed multiple people, and Liberty was convicted of multiple charges, including eight counts of voluntary manslaughter and 12 counts of attempted manslaughter. *Slatten*, 865 F.3d at 792–93. It was unclear whose bullets in the massive shootout killed which victims, and Liberty asserted that there was no evidence that he knew what anyone (other than one other shooter) was doing, and therefore Liberty's shooting "could not have

knowingly aided in the commission of any crime with the requisite intent." *Id.* at 793–94.

However, the D.C. Circuit held that there was sufficient evidence to support Liberty's

convictions as either directly responsible for the deaths or under an aiding-and-abetting theory.

*Id.* at 793. The Court found that "Liberty's failure to opt out [of the gun fight] satisfies the *mens*

*rea* element, which can arise during the crime's commission." *Id.* at 794 (citing *Rosemond v.*

*United States*, 572 U.S. 65, 79–80 (2014). Furthermore,

> Given the evidence before the jury, [the Court found] no difficulty in holding that
> actively participating in a gunbattle in which a gunman kills [multiple victims] can aid
> and abet that killing' even if the government cannot prove which gunman killed which
> victim… *This is especially true where, as here, the gunfire of each shooter hindered*
> *potential escape, leaving victims exposed to the others' bullets.*

*Id.* (emphasis added). Defendant Bledsoe did not use a gun in this particular instance; however,

similar to Liberty, his conduct hindered escape and left victims (scores of law enforcement

officers) and potential victims (Congressmembers and Congressional staff) exposed to violence

through his role in this criminal event. Aiding and abetting law is meant to address and punish

that type of criminal collective action.

The only case the Motion in Limine cites to support its contention that conduct by others

is inadmissible "unless it can at least be shown that Mr. Bledsoe was aware of the conduct at the

time it was occurring," is *Rosemond*. In *Rosemond*, the Supreme Court held that, for a charge of

aiding and abetting the offense of carrying a firearm while drug trafficking (18 U.S.C. §924), the

requisite knowledge for the aider and abettor was knowing about a co-conspirator carrying a

firearm *before* the drug deal began. *Rosemond v. United States*, 572 U.S. 65, 80–81 (2014).

However, the Court found that the aider and abettor would need knowledge of the firearm before

the drug deal to be culpable because that was likely the last safe moment when an aider and

abettor who wanted to do a drug deal, but did not want to use a firearm, could opt out. The Court

explained

> But behaving as the Government suggests [opting out mid-drug deal] might increase the risk of gun violence—to the accomplice himself, other participants, or bystanders; and conversely, finishing the sale might be the best or only way to avoid that danger. In such a circumstance, a jury is entitled to find that the defendant intended only a drug sale—that he never intended to facilitate, and so does not bear responsibility for, a drug deal carried out with a gun.

*Id.* at 80–81.  Here, Defendant Bledsoe could have opted out safely at any time – and in fact he did leave the Capitol before returning a second time, confirming that he was going to the Capitol with full knowledge of the crime to enable him to make the relevant legal and moral choice to opt out instead.  Not only did Defendant Bledsoe fail to voluntarily opt out (police had taken some control when he left the Capitol the first time), but he returned again when given the chance.   From that, a jury could reasonably infer that Defendant Bledsoe had the requisite knowledge of the nature of the crime (obstruction of the certification process) all along. *Id.* at 78 n. 9 (2014) (Of course, if a defendant continues to participate in a crime after a gun was displayed or used by a confederate, the jury can permissibly infer from his failure to object or withdraw that he had such knowledge [i.e., foreknowledge, in time for the accomplice to walk away, that his confederate would commit the offense with a firearm]. In any criminal case, after all, the factfinder can draw inferences about a defendant's intent based on all the facts and circumstances of a crime's commission".)

**E.      The conduct of others is relevant to each offense in Counts Two through Five.**

Defendant Bledsoe's Motion in Limine also asserts that, for Counts Two through Five of the Indictment, in which Defendant "Bledsoe is charged only as a principal," [5] "evidence

---

[5] The Government is not limited to an aiding-and-abetting theory on Count I alone. "Importantly, aiding and abetting is not an independent offense, and the government is not required to explicitly charge aiding and abetting so long as the underlying offense is charged." *United States v. Fitzgerald*, 514 F. Supp. 3d 721, 770 (D. Md. 2021) (citing *United States v.*

concerning conduct by others" is not relevant as such evidence "does not go to a fact of consequence in regards to Mr. Bledsoe's guilt or innocence on those counts," as required by Fed. R. Evid. 401(b).  As discussed above, a motion to exclude *all evidence of or references to the conduct of others* is exceptionally vague and overbroad, and in light of the lack of specific evidence identified and the overly broad nature of the request, the motion in limine should be denied.

Even if Defendant Bledsoe's motion is sufficiently concrete to be decided on the merits, the conduct of others is relevant for each of the final four counts against the defendant.  For instance, for Count Two, Section 1752(a)(1) states that "Whoever …knowingly enters or remains in any restricted building or grounds without lawful authority to do so; …or attempts or conspires to do so, shall be" criminally punished.  18 U.S.C. § 1752(a)(1).  Accordingly, to find a defendant guilty of Entering and Remaining in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(1), the Government must prove "the following beyond a reasonable doubt: (1) the defendant entered or remained in a restricted building without lawful authority to do so; and (2) the defendant did so knowingly."  *United States v. Rivera*, No. CR 21-060 (CKK), 2022 WL 2187851, at *5 (D.D.C. June 17, 2022).  The term "restricted building or grounds" includes "any posted, cordoned off, or otherwise restricted area…of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting."  18 U.S.C. § 1752(c)(1)(b).  Accordingly, the location and movement (conduct) of the Vice President are relevant to establishing the Capitol and its grounds as a restricted building or grounds under

---

*Alexander*, 447 F.3d 1290, 1298 (10th Cir. 2006); *United States v. Dodd*, 43 F.3d 759, 762–63 (1st Cir. 1995); *United States v. Perry*, 643 F.2d 38, 45 (2d Cir. 1981) ("18 U.S.C. § 2 can be read into an indictment which specifically charges only a substantive offense"); *Pigford v. United States*, 518 F.2d 831, 834 (4th Cir. 1975)).

Section 1752(c)(1)(b).[6]  Furthermore, conduct by others is pertinent for the defendant's required mental state – whether the defendant *knowingly* entered or remained without lawful authority – particularly where, as here, a reasonable jury could find that the actions by law enforcement and by the other rioters (putting up and tearing down security  barriers, setting off alarms, screaming, and using tear gas) indicate that Defendant Bledsoe must have known that he had entered and remained in a restricted area without lawful authority during his two entrances to the Capitol.

Count Three has similar considerations, as Section 1752(a)(2) states that "Whoever… *knowingly*, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any *restricted building or grounds* when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; …or attempts or conspires to do so, shall be" criminally punished.  18 U.S.C. § 1752(a)(2) (emphasis added).  Accordingly, conduct by the Vice President, law enforcement, and other rioters again proves relevant to the charge (of whether to find a defendant guilty of Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2)).   Furthermore, the activities of Congress are relevant to the additional element requiring that the conduct "impedes or disrupts the orderly conduct of Government business or official functions."   How those in the Government respond to an attempted disruption is a sign that there was a successful disruption.

For Count Four, Section 5104(e)(2)(D) states

An individual or group of individuals may not *willfully and knowingly*… utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any

---

[6] The Secret Service protects the Vice President.  18 U.S. Code § 3056(a)(1) ("Under the direction of the Secretary of Homeland Security, the United States Secret Service is authorized to protect the following persons: (1) The President, the Vice President (or other officer next in the order of succession to the Office of President), the President-elect, and the Vice President-elect")).

place in the Grounds or in any of the Capitol Buildings with the intent to *impede, disrupt, or disturb* the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress;

40 U.S.C. § 5104(e)(2)(D) (emphasis added).  Again, the activities of Congress members would be relevant, particularly here, since an element of the offense is that the defendant's actions did "impede, disrupt, or disturb the orderly conduct of a session of Congress."   There is also an additional mental state requirement – in addition to knowingly committing the offense, the defendant also has to willfully commit the offense.  Broadly, a person acts "willfully" when they " 'act[ ] with knowledge that [their] conduct was unlawful.' " *Rivera*, 2022 WL 2187851, at \*6 (quoting *Bryan v. United States*, 524 U.S. 184, 191-92 (1998)); *Id*. at \*7 ("to act 'willfully and knowingly' is to 'be aware of and knowingly violate[ ] [a] legal obligation not to commit the charged actus reus'") (quoting *United States v. Burden*, 934 F.3d 675, 680 (D.C. Cir. 2019)); *see also United States v. Moore*, 612 F.3d 698, 703 (D.C. Cir. 2010) (Kavanaugh, J., concurring). Again, the actions and reactions of law enforcement and other rioters could and should have given the defendant a clue as to the unlawful nature of his actions.  Conduct by others would also be relevant for the similar statute in Count Five.  Section 5104(e)(2)(G) states that "An individual or group of individuals may not *willfully and knowingly*… parade, demonstrate, or picket in any of the Capitol Buildings."  40 U.S.C. § 5104(e)(2)(G)(emphasis added). Additionally, Section 5104(e)(2)(G) has the added element of parading, demonstrating, or picketing – all public activities – giving the conduct of, and the Defendant's interactions with, others even more relevancy.

**F.     Alternatively, the above issues should be reserved for trial.**

Alternatively, if the Court believes there may be merit in Defendant Bledsoe's Motion in Limine, rather than granting the motion, it may be "best to defer rulings until trial, [when]

decisions can be better informed by the context, foundation, and relevance of the contested evidence within the framework of the trial as a whole." *Youssef v. Lynch*, 144 F. Supp. 3d 70, 80 (D.D.C. 2015) ("The trial judge's discretion extends not only to the substantive evidentiary ruling, but also to the threshold question of whether a motion *in limine* presents an evidentiary issue that is appropriate for ruling in advance of trial.")  (citing cases from the Second, Eighth, and Ninth Circuits).

### III.    CONCLUSION

For the foregoing reasons, the defendant's motion *in limine* to exclude evidence concerning conduct by others and references to such conduct should be denied.

Dated June 22, 2022.

Respectfully Submitted,

For the United States:

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By:          /s/ Jamie Carter
             JAMIE CARTER
             DC Bar 1027970
             Assistant United States Attorney
             601 D Street, N.W.
             Washington, D.C. 20530
             202-252-6741
             Jamie.Carter@usdoj.gov

             /s/ Melanie L. Alsworth
             Melanie L. Alsworth
             AR Bar No. 2002095
             Assistant United States Attorney
             Detailee
             601 D Street, NW
             Washington, D.C. 20530
             (202) 598-2285
             Melanie.Alsworth2@usdoj.gov