# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | **Case No. 21-cr-00204 - BAH** |
| | : | |
| MATTHEW BLEDSOE, | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S OBJECTIONS TO GOVERNMENT'S PROPOSED EXHIBITS

The United States, by and through its undersigned attorneys, respectfully opposes the

Defendant's Objections to Government's Proposed Exhibits ("Defendant's Objections," ECF

No. 207).

## I.        BACKGROUND

Defendant Matthew Bledsoe ("Defendant Bledsoe") is charged in this case with violating

the following laws during the January 6, 2021 Capitol riots: 18 U.S.C. §§ 1512(c)(2) and 2,

Obstruction of an Official Proceeding and Aiding and Abetting ("Count I"); 18 U.S.C.

§ 1752(a)(1), Entering and Remaining in a Restricted Building or Grounds ("Count II"); 18

U.S.C. § 1752(a)(2), Disorderly and Disruptive Conduct in a Restricted Building or Grounds

("Count III"); 40 U.S.C. § 5104(e)(2)(D), Disorderly Conduct in a Capitol Building ("Count

IV"); and 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol

Building ("Count V").  *See* Indictment, ECF No. 23.

In the days immediately following the November 3, 2020 election, Bledsoe began posting

to social media about the presidential election, including twice predicting riots in Facebook posts

("Trump won, riots will start again soon as the public finds out and propaganda machine start

spewing off at the mouth" and "Everyone with half a braiin knows Trump already won, but when

the useful idiots find out cue the riots"). Ex. 2-3.[1]  On January 6, 2021, Defendant Bledsoe

attended the "Stop the Steal" rally in downtown Washington, D.C.  While Defendant Bledsoe

was at that rally, he received a series of text messages from his wife informing him of the

activities of the joint session of Congress that was convened at the United States Capitol for the

certification.  Between 1:07 p.m. and 1:15 p.m., Defendant Bledsoe's wife sent text messages

informing him that "Pence is making a speech," "Pence is announcing the votes now," "Arizona

has been rejected[.] They're going into chambers now to review."  Ex. 38-40.  an individual,

believed to be Bledsoe's relative, sent a text message to Defendant Bledsoe at 1:21 p.m.,

"Arizona just has 2 objections to their electoral votes."  Ex. 41.  Finally, at 1:40 p.m., an

individual, believed to be Bledsoe's relative, sent a text message to Defendant Bledsoe of a

posting (a "Tweet"), on the social media platform Twitter, which included video footage:

---

[1] On June 14, 2022, the parties filed a Joint Pretrial Statement.  *See* ECF No. 201.  A list of government exhibits was attached as Exhibit C, which provided a description of each exhibit. The exhibits were provided to defense counsel prior to the filing of the Joint Pretrial Statement. Reference to the exhibits in the body of this Opposition correspond to ECF No. 201, Exhibit C.



Ex. 43 and 155.  The video footage showed a crowd shoving and charging at Capitol police officers who were struggling to keep the crowd from breaking past their line of defense and entering the Capitol.  Phone records show that after reading the text message with the above Tweet, Defendant Bledsoe headed *towards* the Capitol building.  Ex. 43-46.  As Defendant Bledsoe was arriving at the Capitol grounds, his friends and family continued to keep him apprised of relevant goings-on in and around the Capitol, for instance sending text messages reading "There's a bomb scare near the Capital [sic]," "You making them evacuate capital [sic] hill?!!,"  and "Videos everywhere of people and police fighting at capital [sic].  Please leave right now."  Ex. 47, 48, and 52.

Instead of leaving, however, Defendant Bledsoe proceeded to journey further onto Capitol grounds to the Capitol building itself, where closed-circuit television ("CCTV") footage and phone footage showed Defendant Bledsoe joining the riot – scaling a wall at the upper Northwest terrace (Ex. 95 and 154); entering the Senate Wing Doors by the upper Northwest terrace (a fire exit door), an audible alarm blaring in the background, with glass visibly broken in

the door he entered, while yelling incendiary phrases, including "In the Capitol. This is our house. We pay for this shit. Where's those pieces of shit [in Congress] at?"(Ex. 60); climbing a statue (Ex. 15); and getting as close to the members of Congress present for the certification as the area immediately outside the Corridor to the House Chamber and the hallways near the door to the Speaker's Lobby (Ex. 26).

During that time, radio transmissions made by the Capitol Police and Metropolitan Police indicate that officers were struggling to adequately protect members of Congress and to stop the rioters from reaching sensitive areas because law enforcement was forced to redirect personnel to several different breached areas, including multiple areas that Defendant Bledsoe entered.  Ex. 144-145.  Also during this time, Defendant Bledsoe's wife continued to send him text messages, including informing him that "They might stop the count because people are breaking into the capital [sic]."  Ex. 61.  Around 2:49 p.m., Defendant Bledsoe left the Capitol building.  Ex. 33 and 158.   His wife continued to keep him abreast of the activities going on in and around the Capitol, including sending a text message noting that "The national Guard has been activated so Matt needs to get the hell up out of there."  Ex. 69.  However, within two hours, Defendant Bledsoe returned, lingering outside the Columbus Doors (also known as the East Rotunda doors) to the Capitol building as law enforcement continued to work to secure the building and its campus.  Ex. 73-75 and 77.  Later that evening, law enforcement was successful in securing the Capitol and its grounds.

In the days following the riot, Defendant Bledsoe continued to message with friends and family and to post on social media regarding what happened during the riot, discussing both events that occurred near him and events that occurred in other parts of the Capitol building.  For

instance, on January 7, 2021, Defendant Bledsoe posted on Facebook photos of Members of Congress taking cover and security officers defending the Members during the riot:

Image 1                                 Image 2



Ex. 24 and 25.

## II.    ARGUMENT

**A.    Social media posts and comments made by Defendant Bledsoe in November 2020 expressing his belief that the Presidential election had been stolen are directly relevant to Defendant Bledsoe's intent, and not unfairly prejudicial, confusing, nor cumulative.**

First, Defendant Bledsoe seeks to exclude as irrelevant or unfairly prejudicial multiple

exhibits (Exhibits 2, 3, 4, 5, 6, 7, 8, 9, 14, and 18) consisting of social media
(Facebook/Instagram) posts and comments made by Defendant Bledsoe in November 2020
expressing his belief that the 2020 Presidential election had been stolen.  ECF 207 at 2-5, ¶¶A-
E.[2]

Those social media posts and comments revealing Defendant Bledsoe's belief that the
2020 election was stolen are directly relevant to establishing that Defendant Bledsoe had the
requisite intent necessary to find him guilty of his various charges, and hence are admissible.
Evidence "is admissible provided that it is 'relevant' and not otherwise prescribed by law or
rule."  *United States v. Fonseca*, 435 F.3d 369, 75 (D.C. Cir. 2006) (citing Fed. R. Evid. 402);
*United States v. Mathews*, 62 F. Supp. 2d 59, 61 (D.D.C. 1999) ("In general all relevant evidence
is admissible").  A piece of "[e]vidence is relevant if: (a) it has any tendency to make a fact more
or less probable than it would be without the evidence; and (b) the fact is of consequence in
determining the action."  Fed. R. Evid. 401.  Accordingly, "[s]o long as the evidence makes a
fact of consequence more or less likely, it is relevant."  *United States v. Latney*, 108 F.3d 1446,
1449 (D.C. Cir. 1997).  Determining relevancy for a criminal trial focuses on whether the
evidence addresses elements of either the charged offense or any relevant raised defenses.
*United States v. Walker*, 32 F.4th 377, 388 (4th Cir. 2022) ("The governing hypothesis of any
criminal prosecution, for the purpose of determining relevancy of evidence introduced, consists
of elements of the offense charged and any relevant defenses raised to defeat criminal liability")
(quoting *United States v. Lamberty*, 778 F.2d 59, 60–61 (1st Cir. 1985)).  However, "evidence
need not be *dispositive* of an element of the crime to be relevant, it must merely cross the low

---

[2] All of the Exhibits referenced in this section are collected in "Appendix A" attached to the
Government's Opposition Brief.

threshold prescribed by Rule 401 [of making a consequential fact more or less probable]."
*United States v. Slatten*, 310 F. Supp. 3d 141, 145 (D.D.C. 2018) (emphasis added).  Thus,
whether "evidence is not conclusive, or even nearly so, [it] is of no moment. '[M]ost convictions
result from the cumulation of bits of proof which, taken singly, would not be enough in the mind
of a fair minded person.'"  *Latney*, 108 F.3d at 1449 (quoting *United States v. Pugliese,* 153 F.2d
497, 500 (2d Cir.1945) (Hand, J.)).

Those November 2020 social media posts and comments in which Defendant Bledsoe in
November 2020 expressed his belief that the 2020 Presidential election had been stolen are
directly relevant to establishing that Defendant Bledsoe had the requisite intent necessary to find
him guilty of the most serious charge against him – felony obstruction of an official proceeding
and aiding and abetting, pursuant to 18 U.S.C. §§ 1512(c)(2) and 2.   Under Section 1512(c)(2),
criminal liability arises for "[w]hoever corruptly… obstructs, influences, or impedes any official
proceeding, or attempts to do so."  18 U.S.C. § 1512(c)(2).  The Government seeks to prove
beyond a reasonable doubt that Defendant Bledsoe violated 18 U.S.C. § 1512(c)(2), which
includes proving beyond a reasonable doubt the following four elements:

First, the defendant attempted to or did obstruct or impede an official proceeding.

Second, the defendant acted with the intent to obstruct or impede the official proceeding.

Third, the defendant acted knowingly, with awareness that the natural and probable effect
of his conduct would be to obstruct or impede the official proceeding.

Fourth, the defendant acted corruptly.

*See* Joint Pretrial Statement (Proposed Jury Instructions) at 13, ECF No. 201.[3]

---

[3] Defendant Bledsoe made no objections to those four elements in the jointly proposed jury
instructions.  Joint Pretrial Statement at 13, ECF No. 201.  Additionally, two Capitol riot cases
charging 18 U.S.C. § 1512(c)(2) that have gone to jury trials have included the above language

The social media posts and comments made by Defendant Bledsoe in November 2020 expressing his belief that the 2020 Presidential election had been stolen are probative of whether he acted with the intent to obstruct or impede an official proceeding (the certification), whether the defendant acted knowingly, and whether the defendant acted corruptly.  To show that a defendant acted "corruptly" under 18 U.S.C. § 1512(c)(2), the Government must show that the defendant acted (1) *with intent to obstruct, impede, or influence*; and (2) wrongfully (such as using unlawful means and/or have a wrongful or unlawful purpose).  *See United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011) (to act "corruptly" is to act "with an improper purpose" and "with the specific intent to subvert, impede or obstruct") (quoting *United States v. Mintmire*, 507 F.3d 1273, 1289 (11th Cir. 2007)); *United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013); *United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013) (upholding jury instruction defining "corruptly" as acting with "consciousness of wrongdoing") (internal quotation marks omitted); *United States v. Matthews*, 505 F.3d 698, 705 (7th Cir. 2007) (upholding instruction defining "[c]orruptly" as acting "with the purpose of wrongfully impeding the due administration of justice"); Seventh Circuit Pattern Criminal Jury Instruction for § 1512(c) ("A person acts

---

in their final jury instructions, *United States v. Reffitt*, No. 1:21-cr-32, 2022 WL 712844 (D.D.C.), Final Jury Instructions at 25, ECF No. 119; *United States v. Robertson*, No. 1:21-cr-34, 2022 WL 1101660 (D.D.C.), Final Jury Instructions at 12, ECF No. 86.  A third case included almost identical language, the only difference being the language for element two (using the wording "*intended* to obstruct" instead of "*acted with the intent* to obstruct…"  *United States v. Hale-Cusanelli*, No. 1:21cr37, 2022 WL 1731979 (D.D.C.), Final Jury Instructions at 24, ECF No. 84.  Also, a fourth case used different language, listing only two elements ("First, the defendant attempted to or did obstruct or impede any official proceeding, and Second, the defendant acted corruptly"); however, under the definition of "corruptly," those final jury instructions also included the "knowingly" and "intent to obstruct" requirements above.  *United States v. Thompson*, No. 1:21-cr-161, Final Jury Instructions at 25, 27, ECF No. 83.  Additionally, in *United States v. Kevin & Hunter Seefried*, No. 1:21-cr-287, a bench trial, Judge McFadden used materially the same instructions, adopting the instructions in the Government's trial brief, *see United States v. Seefried*, No. 1:21-cr-287, 2022 WL 2188320 (D.D.C.), Trial Brief at 9, ECF No. 88.

'corruptly' if he or she acts with the purpose of wrongfully impeding the due administration of justice."); *United States v. Mostofsky*, No. CR 21-138 (JEB), —— F.Supp.3d at ——, 2021 WL 6049891, at *11 (D.D.C. Dec. 21, 2021) ("The Court also concurs with how the court defined 'corruptly' in *Sandlin — i.e.*, requiring that defendants acted 'unlawfully, and with the intent to obstruct[,]' impede, or influence an official proceeding") (citing *United States v. Sandlin*, No. 21-CR-88 (DLF), —— F.Supp.3d at ——, 2021 WL 5865006, at *14 (D.D.C. Dec. 10, 2021)); *see also Arthur Andersen LLP v. United States*, 544 U.S. 696, 706 (2005) ("corruptly," pursuant to neighboring provision 18 U.S.C § 1512(b)(2), requires that the defendant acted with "consciousness of wrongdoing").

Each of the November 2020 exhibits referenced by Defendant Bledsoe reveals that he was very concerned by his mistaken belief that the Presidential election had been stolen, and collectively, the exhibits clearly paint a picture that the allegedly stolen election was an important issue to Defendant Bledsoe.  *See* Exhibit 2 ("Everyone with half a brain knows Trump already won, but when the useful idiots find out, cue the riots"); Exhibit 3 ("Trump won, riots will start again soon as the public finds out and propaganda machine start spewing off at the mouth"); Exhibit 4 ("Everyone knows and we won't let anyone steal it away"); Exhibit 5 ("just know when they were trying to steal votes last night, we were watching"); Exhibit 6 ("Imagine thinking we are too dumb to know Trump won Georgia, NYC, PA, Michigan and Wisconsin"); Exhibit 7 ("He won, don't let the liars and thieves tell you different"); Exhibit 8 (reposting a statement from President Donald J. Trump asserting that "Joe Biden is rushing to falsely pose as the winner" of the November 2020 Presidential election); Exhibit 9 (responding "Yessir" to a comment ("Fuck it I'm killin' em") below a Facebook post titled, "We cannot allow them  to STEAL this Election"); Exhibit 14 (responding "Far from it" to a message ("Fuckin Right!

Think Strategic. Art of War. No chance this is over") in a Facebook thread that later included references to the election, including a Twitter link to a post that mentioned "Ballot Corruption will be exposed tonight…"); and Exhibit 18 ("Trump won electronic night, but everyone will soon find that out").

The Government intends to argue that it was Defendant Bledsoe's desire to prevent an allegedly stolen election from being officially sanctioned that drove him to knowingly and intentionally attempting to obstruct, impede, or influence the certification on January 6, 2021. Social media posts and comments made by Defendant Bledsoe in November 2020 expressing his belief that the 2020 Presidential election had been stolen provide the jury with the reason *why* Defendant Bledsoe would want obstruct, impede, or influence the certification – to prevent an election he believed was stolen from being certified and to cease the peaceful transfer of power.

The exhibits are similarly probative of intent for other charges faced by Bledose, e.g., they indicate that Bledsoe had an "intent to impede or disrupt the orderly conduct of Government business or official functions," as required by 18 U.S.C. § 1752(a)(2).  Hence, Exhibits 2, 3, 4, 5, 6, 7, 8, 9, 14, and 18 speak directly to Defendant Bledsoe's motive and intent.  A defendant's "motive and intent to obstruct the certification of the election results" is a "fact of consequence in determining the action," and evidence that addresses such motive and intent is relevant. *United States v. Fitzsimons*, No. 21-CR-158, 2022 WL 1658846, at *4 (D.D.C. May 24, 2022) (citing Fed. R. Evid. 401; *United States v. Foster*, 986 F.2d 541, 545 (D.C. Cir. 1993) ("[T]here is no such thing as 'highly relevant' evidence or ... 'marginally relevant' evidence. Evidence is either relevant or it is not").  Defendant Bledsoe seeks to undermine the relevance of the above exhibits by noting that the posts occurred "seven weeks" to "two months" prior to the events of January 6, 2021.  ECF 207 at 3-5.  However, "[t]here is ... no bright line rule for determining

when evidence is too remote to be relevant." *Stoe v. Garland*, No. CV 16-1618 (JDB), 2021 WL

4169313, at *7 (D.D.C. Sept. 14, 2021) (finding relevant testimony regarding events that

occurred about three years after the at-issue conduct in an employment discrimination suit)

(quoting *Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 525 (3d Cir. 2003)).

Accordingly, the November 2020 exhibits are relevant.[4]

Furthermore, the social media posts and comments revealing Defendant Bledsoe's belief

that the 2020 election was stolen are not unfairly prejudicial, confusing, nor cumulative pursuant

to Rule 403.  Rule 403 allows a court to exclude relevant evidence if its probative value is

substantially outweighed by "unfair prejudice, confusing the issues, misleading the jury, undue

delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

Pursuant to Rule 403, the court must conduct a balancing test which "requires a fact-intensive,

context-specific inquiry."  *United States v. Ausby*, 436 F. Supp. 3d 134, 153 (D.D.C. 2019)

(quoting *Sprint/United Mgmt. Co.*, 552 U.S. at 388, 128 S.Ct. 1140).  That inquiry must take into

---

[4] Additionally, Defendant Bledsoe takes particular issue with Exhibits 2 and 3 in which he
predicted that there would be riots as a consequence of the 2020 Presidential election.  ECF at 3,
¶B.  However, the fact that Defendant Bledsoe predicted riots is particularly important here.  In
Defendant Bledsoe's motion in limine reply, he asserts that he was not present when anyone at
the Capitol tried to "tear down barriers, forcibly break into the building, struggle or fight with
police, push past police lines, or even disobey any police directive."  Reply To Government's
Opposition To Defendant's Motion In Limine Concerning Conduct By Others And References
To Such Conduct, ECF 205 at 4, 11.  Defendant Bledsoe may likely assert that he did not
directly observe others breaking into the Capitol, and so did not *knowingly* enter or remain in
restricted grounds without lawful authority, as required by to 18 U.S.C. § 1752(a)(1), did not
*knowingly* engage in disorderly or disruptive conduct, as required by 18 U.S.C. § 1752(a)(2), and
did not *willfully and knowingly* utter loud, threatening, or abusive language, or engage in
disorderly or disruptive conduct, as required by 40 U.S.C. § 5104(e)(2)(D).  However, whether
or not he personally observed the first wave of rioters, as discussed above, Defendant Bledsoe
was informed of the riots by text message before he even went to the Capitol grounds, and
Exhibits 2 and 3 show that he had even predicted riots himself, giving him all the more reason to
believe his friends and family when they told him there was rioting at the Capitol.  Hence,
Exhibits 2 and 3 are additionally relevant for this reason.

account the fact that Rule 403 "does not bar powerful, or even prejudicial evidence. Instead, the

Rule focuses on the danger of *unfair* prejudice, and gives the court discretion to exclude

evidence only if that danger *substantially* outweighs[s] the evidence's probative value." *United*

*States v. Mosquera-Murillo*, 153 F. Supp. 3d 130, 177–78 (D.D.C. 2015) (quoting *United States*

*v. Pettiford,* 517 F.3d 584, 590 (D.C.Cir.2008) (emphasis and brackets in original).

Unfair prejudice, within the context of Rule 403, means "an undue tendency to suggest

decision on an improper basis, commonly, though not necessarily, an emotional one." *United*

*States v. Ring*, 706 F.3d 460, 472 (D.C. Cir. 2013) (quoting Fed. R. Evid. 403 advisory

committee's notes).  If the Court believes the outcome of the balancing test is close, then

evidence should be admitted as "Rule 403 'tilts ... toward the admission of evidence in close

cases." 706 F.3d at 474 (quoting *United States v. Moore*, 732 F.2d 983, 989 (D.C. Cir. 1984));

*Fitzgerald v. Henderson,* 251 F.3d 345, 365 (2d Cir.2001) ("Any question as to the weight to be

accorded the [other acts evidence] in connection with [the later discrimination] claims is, of

course, a matter for the jury").

Exhibits 2, 3, 4, 5, 6, 7, 8, 9, 14, and 18 provide little to no risk of unfair prejudice,

confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

cumulative evidence.  The at-issue exhibits do not include anything likely to induce a rational

juror to make a decision on an improper emotional basis, for instance, the posts do not make the

defendant seem either mentally unstable or racist.  *Cf. United States v. Fitzsimons*, No. 21-CR-

158, 2022 WL 1658846, at *5 (D.D.C. May 24, 2022) (finding overly prejudicial a phone call

and voicemail in which the defendant engaged in aggressive rants about the "deep state," made

irrational demands, and expressed racial animus).  Also, there is no risk of confusing the jury,

and as the social media posts are straight forward and do not bring up any outside or confusing

legal issues.  Furthermore, the exhibits are not cumulative.  Here, the number of posts is also

important, as it reflects both the importance of the issue (preventing an allegedly stolen election)

to the Defendant and confirms that no single comment is incorrectly perceived by the jury as a

stray offhanded remark.  Accordingly, Exhibits 2, 3, 4, 5, 6, 7, 8, 9, 14, and 18 should be admitted

under the Rule 403 balancing text as more probative than prejudicial.

**B.      Social media posts made by Defendant Bledsoe later in the day on January 6, 2021 and on January 7, 2021, and a text message sent by Defendant Bledsoe on January 10, 2021, are relevant and not unfairly prejudicial, confusing, nor cumulative.**

Next, Defendant Bledsoe seeks to exclude as irrelevant or unfairly prejudicial multiple

exhibits (Exhibits 13, 22, 23, 24, 25, 26, 27, 28, 83, and 85) consisting of social media

(Facebook/Instagram) posts and comments made by Defendant Bledsoe later in the day on

January 6, 2021 and on January 7, 2021, and a text message sent by him on January 10, 2021.

ECF 207 at 5-6, ¶¶F-G and at 8, ¶K.[5]

Those social media posts and comments made by Defendant Bledsoe later in the day on

January 6, 2021, or on January 7, 2021, and the text message sent by him on January 10, 2021,

are directly relevant to establishing that Defendant Bledsoe had the requisite *intent* for his

various charges.  In each of those exhibits, Defendant Bledsoe expressed an opinion on the

Capitol riots and/or his feelings about the certification.  *See* Exhibit 13 ("What's the plan next?"

"Military," posted at 8:24 p.m. on January 6, 2021); Exhibit 22 (a meme of President Trump with

the caption "Here comes the good part," posted at 7:06 p.m. on January 6, 2021); Exhibit 23

---

[5] All of the Exhibits referenced in this section are collected in "Appendix B" attached to the Government's Opposition Brief.

("Big game at the Capital [sic] today! Patriots versus the Stealers! [with four laughing emojis],"

posted a 9:34 p.m. on January 6, 2021); Exhibit 24 (a photo of Congress members hiding during

the riot with the comment "How corrupt politicians should feel" (Image 1 above), posted at 7:47

a.m. on January 7, 2021); Exhibit 25 (a photo of Congress members hiding and some individuals,

possibly law enforcement, holding guns and otherwise preparing for a possible attack (Image 2

above), posted at 7:47 a.m. on January 7, 2021); Exhibit 26 (a post asking for a "true & honest

recount," posted at 7:48 a.m. on January 7, 2021); Exhibit 27 (a meme comparing the Capitol

riots to another protest), posted at 7:50am on January 7, 2021); Exhibit 28 (a post of a statement

by President Trump regarding the Electoral Certification with the caption "If you think our

president is conceding, then all i have to say is… Enjoy the show," posted at 12:04 p.m. on

January 7, 2021); and Exhibit 85 (a January 10, 2021 text message reading, "They are all going

to be executed," sent by Defendant Bledsoe to an individual with whom he had been texting on

January 6 and 7, 2021 regarding the Capitol riots).[6]

These exhibits are directly related to motive and intent and so are relevant and

admissible, as discussed above.  Exhibits 24 and 25, which appeared to reflect approvingly on

Congressmembers hiding in terror and/or preparing for attack during the riots, are especially

---

[6] Exhibit 83 was mislabeled in the Government's exhibit list as "Text – what's the plan – military," which is actually a reference to Exhibit 13.  Defendant's Objections make clear that it objected to Exhibit 83 because Defendant believed Exhibit 83 was a duplicate of Exhibit 13. ECF 207 at 6 n. 1.  Exhibit 83 actually refers to a conversation in which Defendant Bledsoe's wife informs him that "[t]he national Guard has been activated so [he] needs to get the hell up out of there," and Bledsoe replies, "Yep, here comes the miliary right on cue.  Defendant Bledsoe's wife reiterates "Please get away from there" and he replies, "Bout to soon."  To the extent that the Defendant objects to the actual Exhibit 83 (below), it is highly relevant to the defendant's intent and whereabouts the afternoon of the January 6, 2021 while he was still at or near Capitol grounds.  It also provide no undue prejudice, no confusion for the jury, and is not cumulative.

probative in that they provide direct insight into how the Defendant felt about the unlawful means used to delay the certification (intimidation of Congressmembers), and Defendant's callous attitude the day after the Capitol riot makes it more likely that he had the requisite knowledge and criminal intent the day of the actual riot.  They are also factually related to the defendant's actions inside the Capitol as he was part of the mob of rioters whose presence outside the House Chamber necessitated and complicated the evacuation of those Members of Congress.

Defendant Bledsoe seeks to undermine the relevance of the above exhibits by noting that the posts and text messages occurred later in the day on January 6, 2021 or in the following days. ECF 207 at 5-6, ¶¶F-G and at 8, ¶K.  However, evidence that originated after the at-issue conduct occurred can still be relevant.  For instance, in *Latney*, the D.C. Circuit Court found that the trial court had soundly exercised its discretion to admit evidence of a May 1995 arrest for crack cocaine trafficking during a jury trial for defendant's aiding and abetting the distribution of crack cocaine during an earlier September 1994 incident.  108 F.3d at 1448–50.  Although the May 1995 drug trafficking occurred after the September 1994 incident that was the focus of the trial, the Circuit Court confirmed that

> The probative force of the May 1995 evidence for these purposes [of showing the defendant's intent and knowledge in September 1994] seems to us beyond question. [The defendant] Latney was using his blue Lincoln Continental in May 1995 to facilitate drug trafficking, which made it more likely that he was doing the same eight months earlier. It was more likely with the evidence than without it (*see* Fed. R. Evid. 401) that Latney was knowledgeable about the drug trade in September 1994… *Given Latney's involvement in the crack cocaine trade in May 1995, it was less likely that he was merely a bystander in*

15

*the September 1994 transaction*, as his counsel sought to persuade the jury.

[Furthermore] Latney's knowledge was an element of the aiding and abetting offense and

hence a fact of "consequence" at his trial. Fed. R. Evid. 401. So was Latney's criminal

intent, a state of mind inconsistent with accident or inadvertence… [K]nowledge and

intent were in issue because the burden of proving these elements remained on the

prosecution.

*Id.* at 1448 (emphasis added) (citing *Estelle v. McGuire,* 502 U.S. 62, 69 (1991)).  The probative

value of the after-the-fact evidence here is particularly strong, as there were only a few hours to a

few days between the at-issue conduct (the Defendant's entry into the Capitol for nefarious

purpose) and the evidence (the social media posts and text message).  *See*

 *United States v. Watson*, 894 F.2d 1345, 1349 (D.C. Cir. 1990) ("[L]ater acts are most likely to

show the accused's intent when 'they are fairly recent and in some significant way connected

with prior material events.'" (*quoting United States v. Childs*, 598 F.2d 169, 174 (D.C. Cir.

1979)).

Furthermore, the probative value of the above exhibits far our weighs any potential

prejudice.  Defendant Bledsoe argues that Exhibits 24 and 25 will prejudice the jury against Mr.

Bledsoe by suggesting he "lacked remorse for what happened at the Capitol on January 6, 2021"

(ECF 207 at 6, ¶F), However, even if a jury would count the social media posts against

Defendant Bledsoe as reflective of his lacking remorse, those social media posts are no worse

than the disorderly or disruptive conduct Defendant Bledsoe engaged in the day of the Capitol

riots which makes up the basis for much of his charges, such as yelling incendiary phrases,

including "In the Capitol. This is our house. We pay for this shit. Where's those pieces of shit

at?"  Exhibit 60.  His lack of solemnity and remorse were apparent the day on January 6, 2021,

so there is no additional prejudice based on such accusations.

The above exhibits are also unlikely to confuse a jury and are not cumulative.  As noted above, here, the number of social media posts is important, as it reflects both the importance of the issue (the certification and preventing an allegedly stolen election) to the Defendant and confirms that no single comment is incorrectly perceived by the jury as a stray offhanded remark. Accordingly, 13, 22, 23, 24, 25, 26, 27, 28, 83, and 85 should be admitted under the Rule 403 balancing text as more probative than prejudicial.

**C.**   **Text messages to Defendant Bledsoe on January 6, 2022 which kept Defendant Bledsoe apprised of what was going on in and around the Capitol are relevant and not unfairly prejudicial, confusing, nor cumulative.**

Defendant Bledsoe next seeks to exclude as irrelevant or unfairly prejudicial multiple exhibits (Exhibits 38, 39, 40, 41, 43, 47, 48, 52, 61, 69, and 82) consisting of text message exchanges with Defendant Bledsoe immediately before and during Defendant Bledsoe's time at

the Capitol on January 6, 2021.[7]  ECF 207 at 7, ¶I and 8, ¶J.[8]  During those text message

exchanges, friends and family, including his wife, kept Defendant Bledsoe apprised of relevant

goings-on in and around the Capitol.  *See*  Exhibit 38 ("Pence is making a speech"); Exhibit 39

("Pence is announcing the votes now"); Exhibit 40 ("Arizona has been rejected[.] They're going

into chambers now to review"); Exhibit 41 ("Arizona just has 2 objections to their electoral

votes"); Exhibit 43 (a text message to Defendant Bledsoe of a Tweet which included video

footage showed a crowd shoving and charging at Capitol police officers who were struggling to

keep the crowd from breaking past their line of defense and entering the Capitol); Exhibit 47

---

[7] Defendant's Objections groups Exhibit 82 with text message exchanges that occurred immediately before and during Defendant Bledsoe two excursions into the Capitol.  However, Exhibit 82 features a text message exchange between Defendant Bledsoe and his wife that took place between 8:19 p.m. and 8:22 p.m. EST, after Defendant Bledsoe had left the Capitol. During that exchange, Defendant Bledsoe's wife informed him a news channel on Youtube ("NTD live on YouTube") was reporting that the certification had resumed ("They're back in the office counting votes") and Defendant Bledsoe sent back a text message double-checking the news channel reporting on the certification.  This text message is highly probative because it confirms that Defendant Bledsoe was interested in and following the certification.  This exchange makes it less likely that Defendant Bledsoe was disinterested in the certification, and makes it more likely that he had awareness of the official proceeding and an intent to his obstruct or impede it.  Accordingly, Exhibit 82 is relevant and admissible.  Furthermore, there is no risk of undue prejudice, confusion for the jury, and it is not cumulative.



08:19 –
08:22 PM                         Attachment: IMG_3304.mov

[8] All of the Exhibits referenced in this section are collected in "Appendix C" attached to the Government's Opposition Brief.

("There's a bomb scare near the Capital [sic]"); Exhibit 48 ("You making them evacuate capital [sic] hill?!!"); Exhibit 52 ("Videos everywhere of people and police fighting at capital [sic]. Please leave right now"); Exhibit 61 ("They might stop the count because people are breaking into the capital [sic]"); Exhibit 69 ("The National Guard has been activated so Matt needs to get the hell up out of there").  These exhibits speak directly to Defendant's knowledge before each of his two entries into the Capitol building and are probative of his intent to obstruct or impede the certification.[9]

Additionally, Exhibit 47 ("There's a bomb scare near the Capital [sic]") is relevant not just because it reveals what information Defendant Bledsoe knew before his first entering the Capitol on January 6, 2021, but also because of Defendant Bledsoe's response ("Good").  A reasonable jury could construe Defendant Bledsoe's response as (1) reflective of his hope that there would be something to stop the certification, and (2) evidence that he was comfortable with the idea of the certification being stopped by unlawful means (a bomb scare).  This is probative of Defendant Bledsoe's approval of violent action that might stop, or aid and abet others in stopping, the certification even through other unlawful means.  It also shows his awareness of the larger chaos that was happening in and around the Capitol when he was deciding to join the riot.

Furthermore, the above exhibits are not prejudicial, as they mostly address information about what was happening at the Capitol that was provided to the Defendant the day of January.

---

[9] Additionally, Defendant Bledsoe asserts that those text messages sent to Defendant Bledsoe on January 6, 2021 should be excluded in part because it must first be shown that the Defendant actually read them.  ECF 207 at 7, ¶I.  Records for Defendant Bledsoe's phone submitted to the Defendant also include information confirming if and when each text message was read by Defendant Bledsoe.  Furthermore, if any text messages are missing such information due to technical difficulties or issues with records for the phone or from the service provider, a jury could reasonably conclude that Defendant Bledsoe read such text messages based on (1) his responses to those text messages and (2) phone and social media records showing that Defendant Bledsoe was constantly checking his phone on January 6, 2021.

Furthermore, the text message exchange in Exhibit 47 in no way indicates that Defendant

Bledsoe was responsible for the bomb scare or engaged with that action in any way.  That text

exchange only speaks to Defendant's knowledge of what was happening at the Capitol and his

desire to have the certification stopped, even through unlawful means.  Additionally, those

exhibits are not confusing for the jury or cumulative.  Accordingly, Exhibits 238, 39, 40, 41, 43,

47, 48, 52, 61, 69, and 82 should be admitted under the Rule 403 balancing text as more

probative than prejudicial.

### D.  Text messages in which Defendant Bledsoe or his clothing reference the Proud Boys, and text messages and a video in which Defendant Bledsoe happens to reference Alex Jones, are relevant and not unfairly prejudicial, confusing, or cumulative.

Finally, Defendant Bledsoe seeks to exclude as irrelevant or unfairly prejudicial two sets of

exhibits containing text messages and a video in which Defendant Bledsoe or his clothing

reference the Proud Boys[10] (Exhibits 31 and 35) or Alex Jones (Exhibit 72, 81, and 158).  ECF

207 at 6-7, ¶H and at 8-9, ¶L.[11]

The text messages in which Defendant Bledsoe or his clothing reference the Proud Boys are

relevant and not prejudicial, confusing, or cumulative.  On January 3, 2021, only three days

before the January 6, 2021 riots, the Defendant sent a text message reading, "I am a proud boy,

---

[10] The Proud Boys describe themselves as a "pro-Western fraternal organization for men who refuse to apologize for creating the modern world, aka Western Chauvinists," and multiple members have been indicted for their role in the January 6, 2021 breach of the United States Capitol, including the group's former national chairman.  Press Release, Department of Justice, Leader of Proud Boys and Four Other Members Indicted in Federal Court For Seditious Conspiracy and Other Offenses Related to U.S. Capitol Breach (June 6, 2022), https://www.justice.gov/opa/pr/leader-proud-boys-and-four-other-members-indicted-federal-court-seditious-conspiracy-and.

[11] All of the Exhibits referenced in this section are collected in "Appendix D" attached to the Government's Opposition Brief.

trying to join officially right now." Exhibit 31.  On the morning of January 6, 2021, the Defendant again engaged in a text message exchange in which the other person wrote, "Stay proud ya ugly fucker," and Defendant Bledsoe responded, "Always."  As part of the exchange, an image of a t-shirt with the words "Proud Boys" on the chest appeared to be sent.  The timing is of these text messages indicate that Defendant Bledsoe's interest in the Proud Boys was related to the events of January 6, 2021, which is highly probative given that segments of the Proud Boys are charged with heavy involvement the Capitol riots.

Defendant Bledsoe asserts that "even if Mr. Bledsoe was sympathetic to the Proud Boys, this does not mean that he was sympathetic to everything that they do or that his sympathies informed any actions he may have taken on January 6, 2021.  Beyond this, it appears that in seeking to use the exhibits at issue, the government is seeking to prejudice the jury against Mr. Bledsoe by suggesting an association between him and the Proud Boys."  ECF 207 at 7, ¶H. However, even if the Defendant did not have sympathy for the Proud Boys' goals, which should be left for a jury to decide based on a review of all the evidence, Defendant Bledsoe's sudden interest in a group that was very involved in organizing the Capitol riots makes it much less likely that he was ignorant of the certification and other goings-on at the Capitol during January 6, 2021.

Furthermore, even if there is some mild prejudice associated with the Proud Boys, not all prejudice, even related to hot-button issues like politics, requires evidence to be suppressed under Rule 403.  For instance, in *United States v. Ring*, the D.C. Circuit Court held that the district court had not abused its discretion by finding that the probative value of evidence of defendant's campaign contributions was not substantially outweighed by its prejudicial effect, despite the evidence revealing "[t]he distasteful way in which Ring spoke of campaign

21

contributions" and "the heated national debate about the proper role of money in politics").   706

F.3d at 472, 474.

Regarding the text messages and a video in which Defendant Bledsoe or his clothing

reference Alex Jones, the Government does not intend to discuss or address Alex Jones' identity

or beliefs.   Those exhibits are relevant for showing the Defendant's location at various times and

what was going on at the Capitol.   The video in Exhibit 158 shows the circumstances under

which Defendant Bledsoe left the Capitol the first time – it shows a jury that he did not exit

because he was following the commands of a law enforcement officer, but merely sauntered out

to avoid the effects of the tear gas which had been released in the hallways.   Exhibit 81 shows

his location immediately outside the East Rotunda doors of the Capitol on his return trip which is

also confirmed by Exhibit 72 in which he explains that he came back to the Capitol.   It is

difficult to avoid any references to Alex Jones in the exhibits because the Defendant mentions

him multiple times on the day and is wearing an Alex Jones t-shirt, but Government does not

seek to address this in greater depth in its case in chief.

Because the Government does not seek to address or acknowledge the Alex Jones shirt or

shoutouts, this should help limit any potential prejudice.   Those exhibits are neither confusing or

cumulative.   Although other exhibits help show the Defendant's location (e.g., phone location

information), Exhibits 81 and 158 show the Defendant's actual activities around those locations,

and therefore are highly probative and not redundant.   Also, Exhibit 72 has the Defendant

confirming his return to the Capitol in his own words.   However, to the extent the Defendant

does not want the Government to reference the Defendant returning to the Capitol to find Alex

Jones, the Government would acquiesce in the instant case and not use Exhibit 72.   However, if

the Defendant later contests that he returned to the Capitol or the time he returned to the Capitol,

the Government would reserve the right to seek to admit Exhibit 72 into evidence at that time.

**E.      Alternatively, the above issues should be reserved for trial.**

Alternatively, if the Court believes there may be merit in Defendant Bledsoe's Motion in Limine, rather than granting the motion, it may be "best to defer rulings until trial, [when] decisions can be better informed by the context, foundation, and relevance of the contested evidence within the framework of the trial as a whole." *Youssef v. Lynch*, 144 F. Supp. 3d 70, 80 (D.D.C. 2015) ("The trial judge's discretion extends not only to the substantive evidentiary ruling, but also to the threshold question of whether a motion *in limine* presents an evidentiary issue that is appropriate for ruling in advance of trial.")  (citing cases from the Second, Eighth, and Ninth Circuits).

### III.      CONCLUSION

For the foregoing reasons, the defendant's motion *in limine* to exclude the above evidence should be denied.

Dated July 11, 2022.

Respectfully Submitted,

For the United States:

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By:          /s/ Jamie Carter
             JAMIE CARTER
             DC Bar 1027970
             Assistant United States Attorney
             601 D Street, N.W.
             Washington, D.C. 20530
             202-252-6741
             Jamie.Carter@usdoj.gov

*/s/* Melanie L. Alsworth
Melanie L. Alsworth
AR Bar No. 2002095
Assistant United States Attorneys
Detailee
601 D Street, NW
Washington, D.C. 20530
(202) 598-2285
Melanie.Alsworth2@usdoj.gov

**Appendix A**: Exhibits 2, 3, 4, 5, 6, 7, 8, 9, 14, and 18

Exhibits, to which Defendant Bledsoe objected, which contain social media posts and comments made by Defendant Bledsoe in November 2020 expressing his belief that the Presidential election had been stolen.  Defendant's Objections, ECF 207 at 2-5, ¶¶A-E:

| Exhibit No. | Description | | | | |
|---|---|---|---|---|---|
| | **BLEDSOE'S FACEBOOK MESSAGES AND RECORDS** | | | | |
| 2. | Facebook - page 378 - election post - 11-08.pdf | 2.  | | | |
| 3. | Facebook - page 378-379 - election post - 11-08.pdf | 3.  | | | |

For Exhibit 2:

Facebook Business Record — Page 378

Time 2020-11-08 13:17:47 UTC
Type Comments
Summary Matt Bledsoe commented on a post from November 8, 2020. `Everyone with half a brain knows Trump already won, but when the useful idiots find out, cue the riots`
Object Id S:_I508548968:678688029454888:11

GOVERNMENT EXHIBIT 2

For Exhibit 3:

Time 2020-11-08 13:13:12 UTC
Type Comments
Summary Matt Bledsoe commented on a post from November 7, 2020. `Trump won, riots will

Facebook Business Record — Page 379

start again soon as the public finds out and propaganda machine start spewing off at the mouth `
Object Id S:_I508548968:678688029454888:9

GOVERNMENT EXHIBIT 3

| Exhibit No. | Description | |
|---|---|---|
| **4.** | Facebook - page 379 - election post - 11-07.pdf | 4.<br><br>Facebook Business Record — Page 379<br><br>**Time** 2020-11-07 16:42:54 UTC<br>**Type** Comments<br>**Summary** Matt Bledsoe commented on a post from November 7, 2020. `Everyone knows and we wont let anyone steal it away`<br>**Object Id** S:_I508548968:678688029454888:5<br><br>GOVERNMENT EXHIBIT 4 |
| **5.** | Facebook - page 380 - election post - 11-04.pdf | 5.<br><br>Facebook Business Record — Page 380<br><br>**Time** 2020-11-04 16:59:22 UTC<br>**Type** Comments<br>**Summary** Matt Bledsoe commented on a post from November 4, 2020. `Just know when they were trying to steal votes last night, we were watching`<br>**Object Id** S:_I508548968:2782197255433213:14<br><br>GOVERNMENT EXHIBIT 5 |
| **6.** | Facebook - page 380-381 - election post - 11-04.pdf | 6.<br><br>**Time** 2020-11-04 15:19:03 UTC<br>**Type** Comments<br><br>Facebook Business Record — Page 381<br><br>**Summary** Matt Bledsoe commented on a post from November 4, 2020. `Imagine thinking we are too dumb to know Trump won Georgia, NC, PA, Michigan and Wisconsin `<br>**Object Id** S:_I508548968:2782197255433213:13<br><br>GOVERNMENT EXHIBIT 6 |

| Exhibit No. | Description | |
|---|---|---|
| **7.** | **Facebook – page 381 – election post – 11-04.pdf** | 7.<br><br>Facebook Business Record — Page 381<br><br>**Time** 2020-11-04 15:00:07 UTC<br>**Type** Comments<br>**Summary** Matt Bledsoe commented on a post from November 4, 2020. `He won, don't let the liars and thieves tell you different `<br>**Object Id** S:_I508548968:2782197255433213:12<br><br>GOVERNMENT EXHIBIT 7 |
| **8.** | **Facebook – page 439 – Trump letter.pdf** | 8.<br><br>Facebook Business Record — Page 439<br><br>GOVERNMENT EXHIBIT 8 |
| **9.** | **Facebook – page 481 – yessir.pdf** | 9.<br><br>Facebook Business Record — Page 481<br><br>**Summary** We cannot allow them to STEAL this Election SHOP NOW OPEN @ TATUM SQUAD @The Officer Tatum/join TATUM REPORT NEWS @ OFFICIAL WEBSITE @ SHOP NOW @ BOOKING @ S...<br>**Title** We cannot allow them to STEAL this Election<br>**Url** https://www.youtube.com/watch?v=AfwY0pyZpMU<br><br>**Author**<br>**Sent** 2020-11-16 17:28:07 UTC<br>**Body** Fuck it i'm killin 'em<br><br>**Author** Matt Bledsoe (Facebook: 508548968)<br>**Sent** 2020-11-16 17:28:26 UTC<br>**Body** Yessir<br><br>GOVERNMENT EXHIBIT 9 |

| Exhibit No. | Description | |
|---|---|---|
| **14.** | | 14.  |
| | **Facebook - page 556 - far from over.pdf** | |
| **18.** | | 18.  |
| | **Facebook - page 1679 - election post - 11-10.pdf** | |

**Appendix B**: Exhibits 13, 22, 23, 24, 25, 26, 27, 28, 83, and 85

Exhibits, to which Defendant Bledsoe objected, which contain social media posts and comments made by Defendant Bledsoe later in the day on January 6, 2021, or on January 7, 2021, and a text message sent by him on January 10, 2021.  Defendant's Objections, ECF 207 at 5-6, ¶¶F-G and at 8, ¶K:

| Exhibit No. | Description | | | | |
|---|---|---|---|---|---|
| | **BLEDSOE'S FACEBOOK MESSAGES AND RECORDS** | | | | |
| 13. | Facebook - page 494 - military - 11-04.pdf | 13.  8:24 PM | | | |
| 22. | Facebook - page 2153-2158 - here comes the good part.pdf | 22.  7:06 PM | | | |

| Exhibit No. | Description | |
|---|---|---|
| 23. | Facebook - page 2164-2168- patriots v steelers.pdf |  |
| 24. | Facebook - page 2179-2182 - how lawmakers should feel.pdf | |
| 25. | Facebook - page 2183-2186 - gun House.pdf | |

| Exhibit No. | Description | |
|---|---|---|
| 26. | Facebook - page 2187-2190 - recount demand.pdf |  |
| 27. | Facebook - page 2191-2194 - riot comparison.pdf | |
| 28. | Facebook - page 2212-2217 - enjoy the show.pdf | |

| Exhibit No. | Description | | | |
|---|---|---|---|---|
| | |  | | |
| | **BLEDSOE CELL PHONE: ATTRIBUTION, VIDEOS, PHOTOS, MESSAGES, ATTRIBUTION** | | | |
| 83. | Text – what's the plan – military | | | |

| Exhibit No. | Description | |
|---|---|---|
| 85. | Text – they are all going to be executed | 85.   4:50 PM |

**Appendix C**: Exhibits 38, 39, 40, 41, 43, 47, 48, 52, 61, 69, and 82

Exhibits, to which Defendant Bledsoe objected, which contain text message exchanges to/from Defendant Bledsoe immediately before and during Defendant Bledsoe's time at that Capitol on January 6, 2021.  Defendant's Objections, ECF 207 at 7, ¶I and 8, ¶J:

| Exhibit No. | Description | | | | |
|---|---|---|---|---|---|
| | **BLEDSOE CELL PHONE: ATTRIBUTION, VIDEOS, PHOTOS, MESSAGES, ATTRIBUTION** | | | | |
| 38. | **Text – Pence is making a speech.  Still at Trump** | 38.  01:07 PM | | | |
| 39. | **Text – Pence is announcing votes now** | 39.  01:12 PM | | | |

| Exhibit No. | Description | |
|---|---|---|
| 40. | Text – Arizona has been rejected – going into chambers | 40.  |
| 41. | Text – Arizona just had 2 objections | 41. |
| 43. | Text – tweet of Trump supporters have breached the Capitol building with video | 43. |

| Exhibit No. | Description | |
|---|---|---|
| 47. | **Text re bomb scare** |  |
| 48. | **Text re: evacuating capital hill** | |
| 52. | **Text – people and police fighting** | |

| Exhibit No. | Description | |
|---|---|---|
| 61. | Text – they might stop the count |  |
| 69. | Text – National Guard activated | |
| 82. | Text – they're back counting votes | |

**Appendix D**: Exhibits 31, 35, 72, 81, and 158

Exhibits, to which Defendant Bledsoe objected, which contain text messages and a video in which Defendant Bledsoe or his clothing reference the Proud Boys or Alex Jones.  Defendant's Objections, ECF 207 at 6-7, ¶H and at 8-9, ¶L:

| Exhibit No. | Description | | | | |
|---|---|---|---|---|---|
| | **BLEDSOE CELL PHONE: ATTRIBUTION, VIDEOS, PHOTOS, MESSAGES, ATTRIBUTION** | | | | |
| **31.** | **Text message – 1/3/2021 – I am a proud boy, trying to join officially right now** |  | | | |

| Exhibit No. | Description | |
|---|---|---|
| **35.** | Text – 1/6/2021 – Stay proud – always – including proud boys tshirt graphic | 35.<br> |
| | **BLEDSOE CELL PHONE: ATTRIBUTION, VIDEOS, PHOTOS, MESSAGES, ATTRIBUTION** | |
| 72. | Text – came to find Alex | 72. |

| Exhibit No. | Description | |
|---|---|---|
| 81. | Text – sent video of himself by Columbus Doors |  |
| 158. | Benjamin Reports video – exit & free Alex Jones! | |