UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CASE NO. 21-CR-204 (BAH) |
| v. | : | |
| | : | |
| MATTHEW BLEDSOE, | : | |
| | : | |
| **Defendant** | : | |

### GOVERNMENT'S SUPPLEMENTAL BRIEF IN RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED PURSUANT TO SEARCH WARRANTS

During the final pretrial conference in this case, the Court afforded the government an opportunity to supplement the record to address the basis for Facebook's disclosure of 25 user identifications on January 22, 2021.  *See* Minute Order (July 15, 2022) (directing the government to file "any supplement to its 18 U.S.C. § 2702(c)(4) good-faith reliance argument").  This brief provides additional information in support of the government's argument that (1) both the Federal Bureau of Investigation (FBI) and Facebook relied on 18 U.S.C. § 2702(c)(4), which provides that a telecommunication provider (such as Facebook) may disclose subscriber information "to a government entity, if the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires such disclosure without delay"; and (2) such reliance was objectively reasonable under the circumstances.  In addition, denial of Bledsoe's suppression motion is appropriate because Facebook's January 22, 2021 disclosure was permissible for the other reasons given in the government's opposition to Bledsoe's suppression motion.

The government's prior filing supplies the relevant background.  On January 6, 2021, the day thousands of rioters unlawfully breached the United States Capitol, forcing lawmakers to

evacuate and interrupting the Joint Session that was in the process of certifying the Electoral College vote, the FBI requested Facebook to provide user identification information for individuals who were streaming or uploading information while physically located within the Capitol on that date.  ECF No. 192 at 2.  Facebook began making make disclosures that same day; it made two additional disclosures on January 13, 2021, and January 22, 2021, with information relevant to Bledsoe found in the last of these disclosures.  *Id.* at 2-3.  Tipsters also provided information gleaned from Bledsoe's social media accounts showing Bledsoe's presence in the Capitol on January 6.

Bledsoe moved to suppress the evidence obtained from Facebook (ECF Nos. 182 & 184), and the government opposed (ECF No. 192).  In responding to Bledsoe's motion challenging Facebook's disclosure of his information on January 22, 2021, the government advanced four arguments, including that the good-faith exception under *United States v. Leon*, 468 U.S. 897 (1984), foreclosed relief because "the FBI acted in objectively reasonable reliance on 18 U.S.C. § 2702(c)(4) when requesting a list of Facebook user identification," ECF No. 192 at 9-11.

As noted above, Section 2702(c)(4) provides that a telecommunication provider may disclose subscriber information "to a government entity, if the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires such disclosure without delay."  On January 6, 2021, when the FBI requested user-identification information from Facebook, the FBI relied on Section 2702 when requesting that information.  And it was objectively reasonable for the FBI to conclude in good faith—and ask Facebook to conclude in good faith—that "an emergency involving danger of death or serious physical injury to any person" was occurring at the Capitol and compelled immediate disclosure.  *See* ECF No. 192 at 10 (describing facts concerning the "violent mob" that "broke through police barriers and

2

breached the U.S. Capitol building," including rioters who "brutally assaulted law-enforcement officers," resulting in lost lives and blood shed) (citations omitted).

Invoking a good-faith argument premised on Section 2702(c)(4) is also appropriate here because Facebook relied on that statutory provision in supplying the user identification information. Section 2702 under the Stored Communications Act permits voluntary disclosures of customer records by electronic communication service providers. Under Section 2702(c)(4), it is the electronic communication service provider—that is, Facebook—that may disclose customer records if it has a "good faith" belief that "an emergency involving danger of death or serious physical injury" supports immediate disclosure. Facebook, through counsel, has represented that in relying on Section 2702(c)(4), it concluded that the "danger of death or serious physical injury to any person" justified immediate disclosure on each of the three days on which it made disclosures to the FBI. And ample evidence in the public domain supports that good-faith belief—not only on January 6, but also on the two other dates, January 13, 2021, and January 22, 2021, on which Facebook voluntarily disclosed additional user information.[*] For example, by the end of January, there were still numerous January 6 suspects who still had not been arrested and charged. *See, e.g.,* Jennifer Valentino-DeVries et al., *Arrested in Capitol Riot: Organized Militants and a Horde of Radicals*, The New York Times, https://www.nytimes.com/interactive/2021/02/04/us/capitol-arrests.html (Feb. 4, 2021) (noting

---

[*] The FBI made a single request for user-information to Facebook on January 6, 2021. To the extent Facebook's analysis of whether Section 2702(c)(4) occurred on that same date—which is likely, given that Facebook made its first disclosure at that point—then the fact that Facebook made additional later disclosures arguably does not require a separate good-faith inquiry on the other dates (January 13 and January 22) on which Facebook provided additional materials in support of the FBI's January 6, 2021 request. Nonetheless, for reasons given in the main text, Facebook's good-faith belief that "danger of death or serious physical injury to any person," § 2702(c)(4), compelled immediate disclosure on those subsequent dates is also objectively reasonable.

that as of February 2021, less than a quarter of those involved in the January 6th had been charged). Moreover, there were numerous reports suggesting that a violent mob could attack the inauguration on January 20, 2021. *See, e.g.*, Jacqueline Alemany, *Attack on U.S. Capitol hangs over Biden's inauguration*, Washington Post, https://www.washingtonpost.com/politics/2021/01/18/power-up-attack-us-capitol-hangs-over-biden-inauguration/ (Jan. 18, 2021); Ed Pilkington, *Fears over Biden inauguration security mount after US Capitol attack*, The Guardian, https://www.theguardian.com/us-news/2021/jan/09/biden-inauguration-security-capitol-trump (Jan. 9, 2021). Of course, those concerns need not have been extinguished on January 20 but extended beyond the inauguration; that is, it was reasonable to believe that the same persons who deployed violence to disrupt the peaceful transfer of power on January 6 had not changed their views but rather continued to pose a danger of making new efforts 16 days later, even after Inauguration. *See* Sara Sidner and Mallory Simon, *Heading "into a buzzsaw": Why extremism experts fear the Capitol attack is just the beginning*, CNN.com, https://www.cnn.com/2021/01/16/us/capitol-riots-extremism-threat-soh/index.html (Jan. 18, 2021) (quoting one commentator observing that "[i]t's not before inauguration that we need to be concerned about them trying to spark another civil war—it's after"). In particular, that the individual or individuals who sought to perpetrate a pipe bomb attack then (and still) remained at large played into Facebook's consideration of the existing danger in January 2021. *See* Jeff Pegues, *FBI still hasn't identified pipe bomb suspect a year after Capitol attack*, https://www.cbsnews.com/news/january-6-pipe-bomb-fbi-no-suspect/ (Jan. 6, 2022). Because Facebook relied on Section 2702(c)(4) when it provided user information in response to the request from the FBI, and because that reliance was objectively reasonable, the good-faith exception militates against suppression here. *See* ECF No. 192 at 9-11.

In addition to the good-faith exception, suppression should be denied for the other reasons given in the government's opposition to Bledsoe's suppression motion. *See* ECF No. 192 at 4-9, 15-18.

                                          Respectfully submitted,

                                          MATTHEW M. GRAVES
                                          United States Attorney
                                          D.C. Bar No. 481052

By:    /s/ *Melanie L. Alsworth*
           MELANIE L. ALSWORTH
           AR Bar No. 2002095
           Trial Attorney
           Detailee
           601 D Street, NW
           Washington, DC  20530
           (202) 598-2285
           melanie.alsworth2@usdoj.gov