UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )( | |
| )( | Criminal No. 21-204 (BAH) |
| v.             )( | Judge Howell |
| )( | |
| MATTHEW BLEDSOE      )( | |

### MOTION FOR RELEASE PENDING APPEAL
### AND POINTS AND AUTHORITY IN SUPPORT THEREOF

COMES NOW the defendant, Matthew Bledsoe, by and through undersigned counsel, and respectfully moves this Honorable Court, pursuant to 18 U.S.C.§ 3143(b) and Fed. R. Crim P. 46(c) to order that he be released from the sentence he currently serving while his case is on appeal.  Mr. Bledsoe makes the motion in light of the fact that the United States Supreme Court has granted certiorari for United States v. Fischer, 64 F.4th 329 (D.C. Cir. 2023), which involves the same issue that Mr. Bledsoe currently has on appeal before the United States Court of Appeals for the District of Columbia Circuit.  The Circuit is now holding Mr. Bledsoe's appeal in abeyance pending the Supreme Court's resolution of the Fischer case.  The Supreme Court could very well decide the issue in question in the Fischer case in such a way that the Circuit will have to vacate the only felony count that Mr. Bledsoe was convicted on in this case.  This will require a reduction of his sentence that will likely cause it to end up being less than the time he has now already served.  For these reasons, Mr. Bledsoe requests that he be released from the sentence he is currently serving while his appeal is pending.  In support of this motion, Mr. Bledsoe would show:

1

## RELEASE PRIOR TO SELF-SURRENDER TO BOP

Mr. Bledsoe was arrested in this case on January 15, 2021.  See Presentence Investigation Report (PSR) (ECF #226) at 5.  After his arrest, Mr. Bledsoe was released on conditions, including GPS location monitoring and curfew.  See id.; Order Setting Conditions of Release, Case No. 21-cr 80 (BAH) (ECF #10).  Mr. Bledsoe's trial began on July 18, 2022.  See Docket Entry, 7/18/22, Case No. 21-cr-204 (BAH).  In the 18-month period in which he was on release pending trial, Mr. Bledsoe was in full compliance with his release conditions.  See PSR at 5.[1]  He reported as required for his trial.  See Docket Entry, 7/18/22, Case No. 21-cr-204 (BAH).  At trial, he was found guilty on all five of the counts he had been indicted on.  See Docket Entry, 7/21/22, Case No. 21-cr-204 (BAH).  After Mr. Bledsoe was convicted at trial, the Court allowed him to remain on release pending sentencing.  See id.  Sentencing was held on October 21, 2022.  See Docket Entry, 10/21/22, Case No. 21-cr-204 (BAH).  In the three-month period between trial and sentencing, Mr. Bledsoe remained in full compliance with his release conditions.  See PSR at 5.  He reported as required for sentencing.  See Docket Entry, 7/18/22, Case No. 21-cr-204 (BAH).  At sentencing, the Court gave Mr. Bledsoe 48 months incarceration.  The Court allowed Mr. Bledsoe to self-surrender to the Bureau of Prisons (BOP) once it had completed the designation process for him.  See id.  There are no indications that Mr. Bledsoe violated any of his release conditions while waiting to

---

[1] While the Pretrial Services Agency did submit a report in which it described Mr. Bledsoe's "poor attitude and demeanor," PSR at 5, Mr. Bledsoe never violated any conditions of release or failed to do as instructed the entire time he was pretrial release.  See id.

2

self-surrender to BOP.  On December 6, 2022, Mr. Bledsoe self-surrendered as required to the Federal Correctional Institution (FCI)—Low in Forrest City, Arkansas.  This is where Mr. Bledsoe is currently incarcerated.[2]

## PERTINENT LEGAL ISSUE ON APPEAL

In this case, in connection with the events of January 6, 2021 at the United States Capitol, Mr. Bledsoe was charged by indictment with one felony and four misdemeanors. Indictment (ECF #23).  The counts of the Indictment are as follows: 1) Obstruction of an Official Proceeding and Aiding and Abetting (18 U.S.C. §§ 1512(c)(2) and 2) (felony); 2) Entering and Remaining in a Restricted Building or Grounds (18 U.S.C. § 1752(a)(1)) (misdemeanor); 3) Disorderly or Disruptive Conduct in a Restricted Building or Grounds (18 U.S.C. § 1752(a)(2)) (misdemeanor); 4) Disorderly Conduct in a Capitol Building (40 U.S.C. § 5104(e)(2)(D)) (misdemeanor); and 5) Parading, Demonstrating, or Picketing in a Capitol Building (40 U.S.C. § 5104(e)(2)(G)) (misdemeanor).

In the count of Mr. Bledsoe's indictment charging him with Obstruction of an Official Proceeding (Count One), it was alleged:

> On or about January 6, 2021, within the District of Columbia and elsewhere, Matthew Bledsoe attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, <u>by entering and remaining in the United States Capitol without authority and threatening Congressional officials</u>.

---

[2] On December 19, 2023, undersigned counsel talked by phone with Case Manager Vanlandingham at FCI Forrest City-Low.  Mr. Vanlandingham is Mr. Bledsoe's Case Manager at the facility.  Mr. Vanlandingham confirmed that Mr. Bledsoe self-surrendered to the facility on December 6, 2022 and that he remains incarcerated there.

Indictment at 1 (emphases added).  Prior to trial, Mr. Bledsoe filed a Motion to Dismiss Count One of Indictment for Failure to State and Offense and Points and Authority in Support Thereof (Motion to Dismiss) (ECF #168).  In this motion, Mr. Bledsoe argued that Count One of the Indictment failed to state an offense because 18 U.S.C. § 1512(c)(2) does not apply to the conduct that he was charged with in Count One.  In doing so, Mr. Bledsoe pointed out that 18 U.S.C. § 1512(c)(2) was intended to be understood in relation to its companion provision, 18 U.S.C. § 1512(c)(1), in such a way that the general language of § 1512(c)(2) ("obstruct[ing], influenc[ing], or imped[ing] any official proceeding, or attempt[ing] to do") must be viewed as only applying to a limited subset of conduct that can affect an official proceeding that resembles the specific acts of such conduct that are actually listed in § 1512(c)(1) ("alter[ing], destroy[ing], mutilate[ing], or conceal[ing] a record, document, or other object, or attempt[ing] to do, with the intent to impair the object's integrity or availability for use in an official proceeding").  Id. at 2-21.  Mr. Bledsoe argued that the conduct he was charged with in Count One of the Indictment ("entering and remaining in the United States Capitol without authority and threatening Congressional officials") was not conduct that can be said to be in that limited subset of conduct that affects or can affect an official proceeding.  Accordingly, he argued that § 1512(c)(2) cannot apply to it.  Id. at 2, 32.

      At a pretrial conference held on July 15, 2022, the Court denied Mr. Bledsoe's Motion to Dismiss.  Tr. 7/15/22 at 77-78, 102.  In doing so, the Court rejected Mr. Bledsoe's argument that § 1512(c)(2) must be viewed as only applying to that limited subset of conduct that can affect an official proceeding that resembles the specific acts of

such conduct that are listed in § 1512(c)(1). Id. at 73-97. Rather, the Court ruled that § 1512(c)(2) was intended to be read broadly in connection to § 1512(c)(1) and to be understood as applying to all other conduct that affects or can affect an official proceeding that is not among the specific examples of such conduct listed in § 1512(c)(1), including conduct that, like the conduct Mr. Bledsoe was charged with in Count One of the Indictment, is "directed at the official proceeding itself." Id. at 81-82.

After trial, Mr. Bledsoe noted an appeal to the United States Court of Appeals for the District of Columbia Circuit. That case was assigned appeal number 22-3085. That appeal has now been fully briefed. On appeal, Mr. Bledsoe raises the same issue regarding the applicability of 18 U.S.C. § 1512(c)(2) to the conduct he was charged with that he raised with this Court . See Brief for Appellant (ECF #2001273) at 8-25.

In April 2023, the United States Court of Appeals for the District of Columbia Circuit came down with United States v. Fischer, 64 F.4th 329 (D.C. Cir. 2023). Fischer was a consolidated appeal by the government involving a district court's granting of three defendants' motions to dismiss the charges brought against them under § 1512(c)(2). 64 F.3d at 332-34. Like Mr. Bledsoe, the three defendants in Fischer were also January 6 defendants who were charged with violating 18 U.S.C. § 1512(c)(2). Id. at 333. All three defendants had been charged under § 1512(c)(2) for engaging in riotous conduct inside the United States Capitol on January 6. Id. at 333-34. In dismissing the charges brought against these defendants under § 1512(c)(2), the district court had found that § 1512(c)(2) did not reach the conduct they were charged with under the provision. In so ruling, the district court concluded that the provision must be narrowly read to only apply

to conduct that closely resembles the specific acts in § 1512(c)(1)—that is, obstructive conduct related to documents, records, or other objects.  Id. at 334.

In the Fischer appeal, each of the three judges on the panel submitted a separate opinion.  The lead judge on the panel concluded that § 1512(c)(2) does in fact reach the conduct the defendants were charged with, finding that the provision "applies to all forms of corrupt obstructive conduct of an official proceeding, other than the conduct that is already covered by § 1512(c)(1)."  64 F.4th at 336.  A dissenting judge, however, concluded that § 1512(c)(2) does not reach the conduct the defendants were charged with, finding that the provision only applies to conduct that, like the specific acts in § 1512(c)(1), impacts evidence.  Id. at 370  (Katsas, J., dissenting).  The third judge broke the tie, agreeing with the lead judge that § 1512(c)(2) can be read to reach the conduct the defendants were charged with.  Id. at 351 (Walker, J., concurring).  However, he held that § 1512(c)(2) could only be understood as having the reach that the lead judge gave it if the word "corruptly" at the beginning of § 1512(c) that provides the mens rea element for both § 1512(c)(1) and § 1512(c)(2) is also understood to have a narrow meaning that effectively compensates for the fact that § 1512(c)(2) would otherwise be impermissibly broad in its reach—that is, only if "corruptly" is specifically understood to mean "act[ing] 'with an intent to procure an unlawful benefit either for [one]self or for some other person.'"  Id.  The concurring judge indicated that it is only because he gives "corruptly" this narrow meaning that he finds that § 1512(c)(2) reaches the conduct the defendants were charged with.  Id. at 362 & n.10.  He noted that, if he did not so find that "corruptly" has this specific and narrow meaning he assigns it, he would side with the

6

dissent in finding that the language of § 1512(c)(2) only applies to conduct that impacts evidence and that it therefore does not reach the conduct the defendants were charged with. Id.

As is widely known, the Supreme Court has now granted certiorari in the Fischer case. Given this, The D.C. Circuit has ordered that Mr. Bledsoe's appeal be held in abeyance pending the Supreme Court's resolution of Fischer. Order, 12/22/23, Appeal No 22-3085 (ECF #2032993). Such abeyance is proper because, if the Supreme Court finds that 18 U.S.C. § 1512(c)(2) does not apply to the conduct that the defendants were charged with in that case, the D.C. Circuit will have to find that it does not apply to the conduct that Mr. Bledsoe was charged with in this case.

## SENTENCING ISSUES

Sentencing in this case was held on October 21, 2022. In sentencing Mr. Bledsoe, the Court found that the count charging him with a violation of 18 U.S.C. § 1512(c)(2) (Count One) and the two counts charging him with violations of 18 U.S.C. § 1752 (Counts Two and Three) grouped under the Guidelines per the operation of U.S.S.G. § 3D1.2(c). Tr. 10/21/22 at 76. The Court determined that, for Count One, under U.S.S.G. § 2J1.2, the offense level was 25. The Court then added 2 additional points to that offense level under U.S.S.G.§ 3C1.1, bringing the total offense level up to 27. Id. at 77-78. For Count Two, the Court determined that, under U.S.S.G. § 2B2.3, the offense level was 6. However, finding that Mr. Bledsoe engaged in the conduct underlying the conviction in Count 2 with the intent to commit the obstruction offense in Count One, the Court bumped up the offense level for Count Two from 6 to 25 (the offense level

applicable to Count One under 2J1.2) per the operation of U.S.S.G §§ 2B2.3(c)(1) and 2X1.1(a).  The Court then added 2 additional points to that offense level under 3C1.1, bringing the total offense level for Count Two up to 27 as well.  Id. a 76-77.  For Count Three, the Court determined that, under U.S.S.G. §2A2.4, the offense level was 10.  The Court then added 2 additional points to that offense level under 3C1.1, bringing the total offense level for Count Three up to 12.  Id. at 77.  Given the above, the Court found that the total offense level for the group consisting of Counts One, Two, and Three was 27.  Id. at 78.

Looking at the above calculations, if 18 U.S.C. § 1512(c)(2) was not applicable to the conduct that Mr. Bledsoe was charged with, then his total offense level for the group that included Counts One, Two, and Three would be very different.  First, Count One would not even be in  the group to begin with, and second, for Count Two, his Guidelines offense level would have only been 8 instead of 27.  This is because there would have been no basis for using 2J1.2 (the Guideline applicable to 18 U.S.C. § 1512) to determine the offense level for Count Two per the operation of 2B2.3(c)(1) and 2X1.1(a).  Thus, the group that consisted of Counts One, Two, and Three would only consist of Counts Two and Three, and the total offense level for Count Three, which was 12, would be the determinative offense level for the group.  Mr. Bledsoe's criminal-history score was zero, and he was in Criminal History Category I.  See PSR at 13.  At offense level 12, his recommended Guidelines sentence for the group would have been 10-16 months.  Sentencing Table, U.S.S.G. Chap. 5, Pt. A.

For Counts Four and Five, because they are petty offense that only carry up to six months, the Guidelines are not applicable to them. See Tr. 10/21/22 at 78. Ultimately, at sentencing, the Court gave Mr. Bledsoe a total of 48 months incarceration. Amended Judgment (ECF #246) at 3. In doing so, the Court varied downwardly from the 70-87 month range that it found applied to the group that consisted of Counts One, Two, and Three. See Tr. 10/21/22 at 78. The Court sentenced Mr. Bledsoe to a total of 48 months incarceration by giving him 48 months on Count One (the lead count of the group consisting of Counts One, Two, and Three), 12 months (the statutory maximum) on both Counts Two and Three, and 6 months (the statutory maximum) on both Counts Four and Five—and running all the sentences on these counts concurrently. Amended Judgment at 3. Given this, it is submitted, that if 18 U.S.C. § 1512(c)(2) did not apply to the conduct that Mr. Bledsoe had been charged with, the Court would not have given Mr. Bledsoe more than 16 months total incarceration, which would have been the upper limit of his Guidelines range for the group consisting of Counts Two and Three. While it is quite possible the Court would have given Mr. Bledsoe less time, it seems unlikely the Court would have given him more. If the Court did give Mr. Bledsoe a total of 16 months incarceration, it is believed the Court would have done this by giving Mr. Bledsoe 12 months on Count Two, 12 months on Count Three with all but 4 months of this sentence running concurrently with the sentence for Count Two, and 6 months on both Counts Four and Five with both of these sentences running concurrently with the sentence for Count Two. See U.S.S.G. § 5G1.2(d).

9

As already stated, supra at 3 n.3, on December 19, 2023, undersigned counsel talked by phone with Mr. Bledsoe's Case Manager at FCI Forrest City-Low, Mr. Vanlandingham. Mr. Vanlandingham reported that Mr. Bledsoe has been a "model inmate" ever since he self-surrendered there on December 6, 2022. Given this, Mr. Bledsoe should be entitled to all his good-time credits under 18 U.S.C. § 3624(b)(1). This means that, for a 16-month sentence, Mr. Bledsoe would only have to serve 13.6 months. Moreover, Mr. Vanlandingham reported that, Mr. Bledsoe has been "programming" by participating in UNICOR and taking educational classes, such programming entitling him to additional reductions in his sentence under the First Step Act, Pub. L. 115-391. Given all this, if Mr. Bledsoe had only been given a 16-month sentence, he would almost certainly have been deemed to have served it already.[3] Accordingly, it seems safe to say that, if 18 U.S.C. § 1512(c)(2) did not apply to the conduct Mr. Bledsoe was charged with, he has likely served whatever sentence the Court would have given him.

**MR. BLEDSOE SHOULD BE RELEASED PENDING APPEAL**

18 U.S.C.§ 3143(b) allows a district court that has sentenced a defendant to order him released from custody while an appeal is pending. The provision specifically contemplates that the court can do this even after the defendant has noted that appeal. Indeed, Fed. R. Crim P. 46(c), which states that 18 U.S.C. § 3143 applies for determining release for a defendant pending appeal, recognizes that, in contravention to "the general

---

[3] Mr. Bledsoe would also have most likely been released to a halfway house several months ago by now, too.

rule… that an appeal to a circuit court deprives the district court of jurisdiction, …the district court retains jurisdiction to decide whether the defendant should be detained, even if a notice of appeal has been filed." Fed. R. Crim. P. 46, Notes, 2002 Amendments.  See also United States v Meyers, 95 F.3d 1475, 1488 n.6 (10th Cir. 1996) ("Although the filing of a notice of appeal usually divests the district court of further jurisdiction, the initial determination of whether a convicted defendant is to be released pending appeal is to be made by the district court."); Fed. R. App. P. 9, Advisory Committee Notes, Subdivision (b).

18 U.S.C. § 3143(b)(1) requires that a court detain a sentenced defendant who has noted an appeal unless the court finds:

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title;  and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
>
>> (i) reversal,
>>
>> (ii) an order for a new trial,
>>
>> (iii) a sentence that does not include a term of imprisonment, or
>>
>> (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

If the court finds that the subparagraphs (A) and (B) above apply, then the court:

> [S]hall order the release of the [defendant] in accordance with section 3142(b) or (c) of this title, except that in the circumstance described is subparagraph (B)(iv) of this paragraph, the [court] shall order the detention terminated at the expiration of the likely reduced sentence.

Id.

In <u>United States v. Perholtz</u>, 836 F.2d 554 (D.C. Cir. 1987), the United States Court of Appeals for the District of Columbia Circuit addressed whether three appellants should be released under 18 U.S.C. § 3143(b) while their appeal was pending. On appeal, the appellants were claiming that all of the counts they had been convicted on at trial had to be reversed because of erroneous application of the mail-fraud statute (18 U.S.C. § 3141). <u>Id.</u> at 556. Accordingly, the Circuit indicated that it needed to determine "whether appellants' appeal 'raises a substantial question of law or fact likely to result in reversal.'" <u>Id.</u> at 555. In order to make this determination, the Court indicated that it had to assesses whether the appellants were raising a substantial question of law or fact that, if decided in their favor, would result in the reversal of their convictions. <u>Id.</u> Addressing what constitutes a substantial question of law or fact, the Court expressly held that such a question is "a 'close' question or one that could very well be decided the other way." <u>Id.</u> (citing cases).

In <u>Fischer</u>, in a two-to-one decision, the D.C. Circuit found that 18 U.S.C. § 1512(c)(2) does apply to conduct like that which Mr. Bledsoe has been charged with in this case. However, the concurrence in the decision only agreed with the lead judge's conclusion that 1512(c)(2) does apply to such conduct because it also found that the word "corruptly" at the beginning of 1512(c) has a narrower meaning that its commonly understood one that effectively compensates for what it found would otherwise be an impermissibly broad application of 1512(c)(2). The concurrence indicated that, if it did not find that "corruptly" has this narrow meaning, it would have gone with the dissent in finding that 1512(c)(2) does not apply to conduct like that which Mr. Bledsoe has been

charged with.  See supra at 5-7.  Given the fact that the Supreme Court has now agreed to review the Fischer decision, it is submitted that whether or not 1512(c)(2) applies to the conduct that Mr. Bledsoe was charged with is "a 'close' question or one that could very well be decided the other way"—especially given the concurrence's questionable reason for siding with the lead judge instead of the dissenting one.  Moreover, given that, prior to his self-surrender to BOP, Mr. Bledsoe was in full compliance with his conditions during the entire 23-month period he was on release and given that he reported for his trial and sentencing as required and that he self-surrendered to BOP as required, see supra at 2-3, it is submitted that there is clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any other person or the community if released.  Finally, Mr. Bledsoe has likely served whatever sentence he would have been given if 1512(c)(2) did not apply to the conduct he was charged with.  See supra at 7-10.  Accordingly, if the Supreme Court decides Fischer in such a way that the D.C. Circuit will have to vacate Mr. Bledsoe's conviction under 1512(c)(2) for his appeal, this will likely result in him being given a "reduced sentence… of imprisonment less than the total of the time already served plus the expected duration of the appeal process."  Indeed, it will likely result in him being given a sentence that is less than the time he has already served alone.  Because of all this, Mr. Bledsoe should be released while his appeal is pending.

**CONCLUSION**

WHEREFORE, the defendant, Matthew Bledsoe, moves this Honorable Court to order that he be released from the sentence he currently serving while his case is on appeal.

>Respectfully submitted,
>
>_____/s/_____
>Jerry Ray Smith, Jr.
>D.C. Bar No. 448699
>Counsel for Matthew Bledsoe
>717 D Street, N.W.
>Suite 310
>Washington, DC 20004
>Phone: (202) 641-4211
>E-mail: jerryraysmith@verizon.net