**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 21-204 (BAH)** |
| | : | |
| **MATHEW BLEDSOE,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**MOTION FOR RELEASE PENDING APPEAL**
**AND POINTS AND AUTHORITY IN SUPPORT THEREOF**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes the defendant's motion (ECF 256), seeking release pending appeal in light of the Supreme Court's recent decision to grant *certiorari* in United States v. Fischer, No. 23-5572, 2023 WL 860578 (Dec. 13, 2023).  Regardless of the outcome in *Fischer*, the defendant cannot establish by clear and convincing evidence that he does not pose a danger to the community and is not a flight risk, and the defendant cannot show that there is any likelihood that the outcome in *Fischer* will result in a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

**I.      BACKGROUND AND PROCEDURAL HISTORY**

The grand jury returned an indictment on March 10, 2021, charging the defendant with felony violation of 1512(c)(2), as well as four misdemeanors.  *See ECF No. 23*.  On July 21, 2022, the defendant was convicted of all counts following a jury trial.  *See ECF No. 219*.  On October 21, 2022, the defendant was sentenced to the following:

**Count One – 18 U.S.C. § 1512(c)(2):** forty-eight months of incarceration to run concurrently, thirty-six (36) months of supervised release to run concurrently and $100 special assessment,

**Counts Two and Three – 18 U.S.C. § 1752(a)(1) and (2):** Twelve months of incarceration to run concurrently, twelve (12) months of supervised release to run concurrently and $25 special assessment for each count,

**Counts Four and Five – 40 U.S.C. § 5104(e)(2)(D) and (G):** Six months of incarceration to run concurrently and $10 special assessment for each count.

*See ECF No. 237*.  On November 2, 2022, the defendant filed his Notice of Appeal.  *See ECF No. 239*.  The defendant was ordered to self-surrender on November 24, 2022.  On November 6, 2022, the defendant filed a motion to extend his self-surrender date.   *See ECF No. 241*.  The government objected.  *See ECF No. 242*.   The court allowed the defendant to surrender on a date after November 30, 2022.  *See ECF No. 243*.  Per the instant motion, the defendant self-surrendered on December 6, 2022.  *See ECF No. 256*.  On December 31, 2023, the defendant filed this motion for release pending appeal.  *See Id.*

## II.    LEGAL STANDARD

The defendant moves for release pending appeal under 18 U.S.C. § 3143(b).  The statute does not authorize the defendant's release here.

Under 18 U.S.C. § 3143(b), a defendant who has been sentenced to a term of imprisonment "shall . . . be detained" unless the court finds that two separate requirements are met:

> (1)    "clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released," and
>
> (2)    that the appeal "raises a substantial question of fact or law likely to result in—(i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."

18 U.S.C. § 3143(b)(1)(A)-(B).  The requirements for "reversal" and "an order for a new trial" encompass all counts, not just a single count.  *United States v. Perholtz*, 836 F.2d 554, 557 (D.C. Cir. 1988) (explaining that defendants "cannot be released unless the appeal raises a substantial

question likely to result in reversal of *all counts* on which imprisonment is imposed") (emphasis supplied).  If a judicial officer finds that a defendant is eligible for release because the appeal is "likely" to result in "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process," the remedy is not immediate release; rather, "the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence."  18 U.S.C. § 3143(b)(1)(B).  It is the defendant's burden to make the requisite showing under 18 U.S.C. § 3143(b)(1)(B).  *Perholtz*, 836 F.2d at 555-56 (referring to "the required showing on the part of the defendant"); *United States v. Libby*, 498 F. Supp. 2d 1, 3 (D.D.C. 2007).

### III.   ARGUMENT

Even assuming that the *Fischer* issue raises a "substantial question," the defendant fails to make the required showing for release.  First, the defendant has not shown by clear and convincing evidence that he is not a flight risk.  Unlike when he was last on release, he now knows the day-to-day reality of confinement in prison.  He has served just over thirteen months of his forty-eight month sentence leaving the majority of that time – just under thirty-five more months – still to serve in the future.  Having this time hanging over his head may make it more likely that he will decide to flee.

He would not be the first January 6 defendant to flee, abscond, or fail to appear while facing a hefty charge or sentence.  See, e.g., *United States v. Worrell*, 21-cf-292 (RCL), Dkt. 295 (after being detained pending trial and then released, defendant absconded before sentencing); *United States v. Bru*, 21-cr-352 (JEB), Dkt. 66, June 26-July 6, 2023 Minute Entries; *United States v. Burlew* (RDM), 21-cr-647 (RDM), Nov. 30, 2023, Dec. 8, 2023 Minute Entries; *United States v. Olivia Pollock*, 21-cr-447-5 (CJN), Dkt. 208, March 6, 2023, May 19, 2023, August 7, 2023

Minute Entries; *United States v. Hutchinson*, 21-cr-447-2 (CJN), April 6, 2023, May 19, 2023, August 7, 2023 Minute Entries; *United States v. Giustino*, 23-cr-00016 (JEB), September 29, 2023 Minute Entry; *United States v. Dennison*, 23-cr-00032 (TNM), June 5, 2023 Minute Entry; *United States v. Shawndale and Chilcoat*, 22-cr-00299, September 5, 2023, September 9, 2023, October 5, 2023, October 6, 2023, October 13, 2023 Minute Entries.  Furthermore, the defendant earlier struggled with being verbally disrespectful and combative with his supervision officers who were merely trying to enforce the court's orders regarding pretrial release.  See ECF 206.  Also, the defendant perjured himself at trial – demonstrating a lack of respect for the judicial process.  See ECF 236.  Given this struggle with a lesser level of supervision and the court's authority combined with the now lived reality of his incarceration, the defendant has not shown that he is not a flight risk.

The defendant is also unable to show by clear and convincing evidence that he is not a danger.  Unlike the last time this Court considered his release, we are now in a presidential election year.  During the last such election cycle, the defendant demonstrated his approval of violence and mob action to challenge the peaceful transfer of power.  Leading up to January 6, the defendant's rhetoric showed an actual anticipation of violence – referencing riots, stating, "Far from it" in response to a post, "…No chance this is over," posting a photoshopped photo of the former President with a firearm, and responding "Yessir" in response to another person's statement, "Fuck it I'm killin 'em."  See Exhibit 1.06, 1.07, 1.08, 1.09, 1.11.

On January 6, the defendant was warned that there was a bomb scare near the Capitol and responded with approbation, "Good."  See Exhibit 2.16.  Another person asked, "You making them evacuate capital hill?!!," and the defendant responded, "We here."  See Exhibit 2.17.  He climbed the Capitol building's wall and posted a photo with the caption, "Nothing can stop whats

coming."  See Exhibit 1.17.  As he entered the Capitol, he yelled, "Where's those pieces of shit at?"  See Exhibit 2.29.  After leaving the Capitol, the defendant posted a photoshopped photo of Trump and Flynn with the text "You ready?" by Trump, "Just set me loose Sir…" by Flynn, and "Here comes the good part."  See Exhibit 1.21.  He also wrote, "Military" in response to a friend's question, "What's the plan next?"  See Exhibit 1.23.  Finally in a message on his phone, the defendant wrote, "They are all going to be executed."  See Exhibit 2.49.  The defendant does not lay out a plan that would protect the public, especially people in Congress, from the threat that he poses.

The defendant also fails to meet the second prong of the test.  While the mere fact that the Supreme Court agreed to hear *Fischer* does not indicate that those opinions were wrongly decided, *see, e.g.*, *Heath v. Jones*, 941 F.2d 1126, 1131 (11th Cir. 1991) ("[T]he grant of certiorari does not necessarily indicate that the position advocated by Heath has any merit, only that it is an important question"), even assuming the appeal raises a "substantial question of law," the defendant does not show that it is "likely" to lead to a reversal on all counts or a reduced sentence of slightly over a year.

Given the broad question presented by *Fischer*, a myriad of possible rulings could occur— including numerous outcomes that would *not* undermine the defendant's conviction on Count One. And even if the Supreme Court does rule in a way that undermines the defendant's conviction, the remedy is not to release the defendant now.  Instead —and unlike with release based on a reversal, likelihood of trial, or non-jail sentence—the statute directs the Court to order the defendant released only once he has served the amount of time he is likely to serve upon resentencing, not immediately. 18 U.S.C. § 3143(b)(1)(B) ("in the circumstance described in subparagraph (B)(iv) of this paragraph, the judicial officer shall order the detention terminated *at the expiration of the*

*likely reduced sentence*") (emphasis supplied).  Therefore, to release defendant based on the likelihood of a reduced sentence, the Court must calculate that reduced sentence, and defendant must still serve that amount of time before being released pending appeal.  *See, e.g.,* May 25, 2023 Order, *United States v. Brock,* D.C. Cir. Case No. 23-3045 (denying motion for release pending appeal in January 6 case where "the district court did not specifically address what appellant's 'likely reduced sentence' would be if his conviction under 18 U.S.C. § 1512(c) is reversed. Nor has appellant made that showing…").

*Fischer* will not disturb Bledsoe's convictions on four other counts, carrying an aggregate statutory maximum of three years. A reversal of the § 1512(c) conviction could increase the aggregate sentence on those remaining counts:

> [In cases] involv[ing] multicount indictments and a successful attack by a defendant on some but not all of the counts of conviction . . . the Government routinely argues that an appellate court should vacate the entire sentence so that the district court may increase the sentences for any remaining counts up to the limit set by the original aggregate sentence. And appellate courts routinely agree.

*Dean v. United States*, 137 S. Ct. 1170, 1176 (2017).  For example, the Court could find that, in light of the aggravating facts here, it is appropriate to run defendant's sentences on other counts consecutively.

This case, further, is different than cases where defendants have been released pending appeal. *See, e.g.*, *United States v. Adams*, 21-cr-354-APM (ECF No. 85); *United States v. Sheppard*, 21-cr-302-JDB (ECF No. 142). To start, both of those cases involved far less incarceration than the defendant's sentence. This distinction is notable, and the defendant's sentence reflects the defendant's conduct here, which was egregious and dangerous.  Moreover, both of those cases involved prior and strong findings as to the lack of danger or flight risk each defendant presented at the time.

With respect to the comparative sentences, both judges above properly assessed whether a reversal on the §1512 conviction would "likely" result in a "reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." *Sheppard*, ECF No. 142, at *6 ("Accordingly, the Court must embark on the unusual task of predicting the sentence"). Here, unlike in *Adams*, the defendant's remaining convictions include four separate misdemeanors, all of which could be served consecutively such as to form a total sentence of incarceration greater than 12 months. U.S.S.G. §5G1.2(d).  Indeed, in the event of a reversal on §1512, the government would nonetheless seek a sentence commensurate with the defendant's *conduct*, which features the defendant's intent and actions to obstruct Congress during a Joint Session to determine the next democratically-elected President of the United States. [1]  In other words, the government would seek a stiff sentence of incarceration, which may include an upward variance or departure to account for the aggravators present in this case.

As further detailed above, the defendant expressed approval of violence and a willingness to participate with groups who were interfering with the election.  He repeatedly expressed his intent on his social media before and during the riot.  He then bragged about his actions on social media in the aftermath of the riot and mocked the congressmen and congresswomen who were trapped by the mob in the House Chamber.   Rather than recognizing and accepting true

---

[1] While a reversal of his 1512 conviction would affect the statutory maximum sentence here, it is possible that Bledsoe's guidelines could remain unchanged.  Depending on the ruling in *Fischer,* the government may still be able to argue that Bledsoe's conviction under 18 U.S.C. § 1752(a)(1) cross references to the obstruction guideline, U.S.S.G. § 2J1.2, because, by a preponderance, Bledsoe acted with the intent to commit obstruction of an official proceeding.  *See* U.S.S.G. 2B2.3(c) (trespass guideline containing cross reference where "the offense was committed with the intent to commit a felony offense").  The cross reference to U.S.S.G. § 2J1.2 would result in a total offense level of 27 (including the obstruction enhancement for Bledsoe's false testimony). Neither *Adams* nor *Sheppard* considered this possibility, which would support an argument for imposing consecutive sentences on the remaining counts, given the one-year statutory maximum on the 18 U.S.C. § 1752(a)(1) violation.

responsibility for his actions and their consequences on others, he chose to lie about them under oath at trial.  The government would argue that his eager participation in a violent and dangerous disruption of the peaceful transfer of power merits a sentence comparable to the one imposed regardless of whether it is made up of the four misdemeanors or all five charges.  Unlike in *Sheppard* and *Adams,* Bledsoe received an enhancement for his aiding and abetting of those who were violent and for endorsing threats of injury and property damage under U.S.S.G. § 2J1.2(b)(1)(B).  Any resentencing should account for this difference at the original sentencing.

Moreover, and also unlike in *Sheppard*, where the defendant would have benefitted from the possible adjustment of the newly-enacted §4C1.1, ECF No. 142, at 7, here, the defendant's violent rhetoric and conduct warranted an 8-point adjustment for "causing or threatening to cause physical injury to a person, or property damage". *See* §2J1.2(b)(1)(B). The defendant's behavior would thus prevent application of §4C1.1. *See* §4C1.1(a)(3). In *Sheppard*, the Court also considered the defendant's youth, his lack of maturity, the absence of any violent or destructive conduct, his history with his family and the community, and some truthful, candid testimony he offered at trial. ECF 142, at *7.  In *Adams,* Judge Mehta credited factors including "the obstacles [Adams] overcame in life." *Adams,* ECF No. 85, at 6.  Those factors in total do not carry the same weight here.  The defendant is a grown man, married with a family, and the sole operator and owner of his own successful business.  He approved of violent action in his posts, ignored or even approved of warnings about violence at and around the Capitol, ignored physical damage to the building and the presence of riot police, continued to participate in the riot despite the rioters around him ominously calling for an elected official, and lied under oath.

While the government respectfully disagrees with the ultimate decisions in *Adams* and *Sheppard*, both decisions provide a framework for deciding release in this context.  But the cases

findings about the defendants' intent and actions on January 6 are not the same.  And while it is true that this Court would rightly evaluate a possible reduction in sentence if only the misdemeanors remained, in an adverse, post-*Fischer* world, the Court must still fashion a sentence under the 3553(a) factors that addresses the defendant's conduct on that day, including consideration of aggravating circumstances not taken into account by the Sentencing Commission in formulating guidelines for the particular statute. 18 U.S.C. § 3553(a) and (b)(1).  As Judge Kelly said, "even if it doesn't meet 1512, wouldn't I be quite entitled -- it would be almost crazy if I didn't, in my view, vary up significantly because there would be no -- it's still, I think we can agree, very bad -- a very bad thing if someone tried to obstruct that proceeding."  United States v. Gilbert Fonticoba, 21-cr-638 (TJK) Sentencing Tr. at 48:6 - 22 (Jan. 11, 2024).

After considering those factors, the Court should impose a higher sentence well beyond the sentences received by defendants who, for example, pled guilty, accepted responsibility, and were convicted of a sole misdemeanor count, which it could do by running sentences on the remaining offenses consecutively.  A consecutive sentence would correctly reflect the defendant's attack on the rule of law in this country.  The resulting "likely" period of incarceration that would be applied if only the other counts of conviction remained would extend well beyond the Supreme Court's anticipated decision in or before June 2024.

For all these reasons, the defendant's motion for release should be denied.

Respectfully Submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:

JAMIE CARTER
Assistant United States Attorney
D.C. Bar 1027970